976 A.2d 1128 (2009)
409 N.J. Super. 330
HOMES OF HOPE, INC., Plaintiff-Respondent,
v.
EASTAMPTON TOWNSHIP LAND USE PLANNING BOARD, Defendant-Appellant.
Docket No. A-5551-07T2
Superior Court of New Jersey, Appellate Division.
Argued April 28, 2009.
Decided August 24, 2009.
*1130 Christopher J. Norman, Medford, argued the cause for appellant (Norman, Kingsbury & Norman attorneys; Mr. Norman, on the brief).
Patrick F. McAndrew, Medford, argued the cause for respondent.
Carl S. Bisgaier, Cherry Hill, argued the cause for amicus curiae Fair Share Housing Center (Flaster/Greenberg P.C., attorneys; Mr. Bisgaier, on the brief).
Before Judges WINKELSTEIN, GILROY and CHAMBERS.
The opinion of the court was delivered by
WINKELSTEIN, P.J.A.D.
The issue presented is whether affordable housing continues to constitute an inherently beneficial use for purposes of obtaining a use variance, N.J.S.A. 40:55D-70d(2), after the municipality in which the property is located has met its fair share obligation under the Fair Housing Act (FHA), N.J.S.A. 52:27D-301 to -329.19, and its concomitant regulations. We conclude that a municipality's compliance with the FHA by meeting its fair share obligation does not impact affordable housing's inherently beneficial use status for purposes of obtaining a use variance. Affordable housing continues to foster the general welfare and constitutes a special reason to support a use variance.
Plaintiff Homes of Hope, Inc. (Homes of Hope), a non-profit provider of affordable housing, filed an application with the Township of Eastampton Land Use Planning Board (the Board), seeking to create eight affordable housing units on an .848 acre lot in the Township. The lot is located in an area designated as the R-M Residential Medium Density District. While single family homes are permitted in that zone, multifamily dwellings are not.
Currently located on the lot is a brick building containing four dwelling units. Homes of Hope proposes to construct two duplexes, one on each side of the existing building. It has agreed to deed-restrict the eight units as affordable housing. Construction of the additional four affordable housing units requires a use variance pursuant to N.J.S.A. 40:55D-70d(2). To obtain the variance, Homes of Hope must satisfy both the positive and the negative criteria. Sica v. Bd. of Adjustment of Twp. of Wall, 127 N.J. 152, 156, 603 A.2d 30 (1992). Homes of Hope claims that providing affordable housing will improve the general welfare, rendering its proposal inherently beneficial, thus presumptively satisfying the positive criteria. Burbridge v. Mine Hill, 117 N.J. 376, 386, 568 A.2d 527 (1990).
*1131 Prior to Homes of Hope's proposal, the Council on Affordable Housing (COAH), see N.J.S.A. 52:27D-305, determined that a 100-unit "low-income family rental development" left the Township with a surplus of twenty-one units toward its fair share obligation for affordable housing for 1999-2014. Based on that determination, the Board found that Homes of Hope's proposed affordable housing was not inherently beneficial, and thus evaluated its use variance application in light of both the positive and negative criteria, denying the application.
The trial court reversed the Board. Relying on Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel (Mount Laurel II), 92 N.J. 158, 456 A.2d 390 (1983), Judge Sweeney stated that it is "without question that the [Mount Laurel C]ourt did not intend for each municipality to meet only the needs of the homeless within strict boundaries of each town," but, instead, to contribute to the needs of the entire State. The court concluded:
I'm satisfied that the Board has to consider this application in light of ... the standard of inherently beneficial [use]. Of course, that means only that the Board must reconsider the application and not that it must automatically grant it.... [T]he case has to be reheard, that an opportunity has to be given to the applicant to present its facts in the more favorable light that is attendant to ... the inherently beneficial use standard,... and the [B]oard retains its right to decide whether a variance is appropriate under the new standard.
We agree with the trial court.
To obtain a use variance under section 70d of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, an applicant must satisfy both the positive and negative criteria. Sica, supra, 127 N.J. at 156, 603 A.2d 30. The positive criteria require the applicant to demonstrate special reasons for the grant of the variance. Ibid. Special reasons may be found in N.J.S.A. 40:55D-2, the purposes of the MLUL. An inherently beneficial use presumptively satisfies the positive criteria, while other uses must demonstrate that they are particularly suited for the location. Burbridge, supra, 117 N.J. at 386, 568 A.2d 527. Where an applicant proposes an inherently beneficial use, "the proofs supporting special reasons focus less on the characteristics of the specific property and to a greater extent on whether the proposed use furthers the general welfare." Stop & Shop Supermarket Co. v. Bd. of Adjustment of Springfield, 162 N.J. 418, 430, 744 A.2d 1169 (2000).
The negative criteria require the applicant to demonstrate that a grant would not result in "substantial detriment to the public good and ... will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." Sica, supra, 127 N.J. at 156, 603 A.2d 30 (internal quotation omitted). Consequently, even if an applicant proposes an inherently beneficial use, the applicant must still demonstrate that any detriment or impairment is sufficiently outweighed by benefits to the public good. Id. at 165-66, 603 A.2d 30.
Affordable housing is an inherently beneficial use, id. at 165, 603 A.2d 30, having "the right to locate on any appropriate site where the ... impact of their operations can be alleviated to a reasonable extent by the imposition of suitable conditions and restrictions." Id. at 163, 603 A.2d 30 (internal quotation omitted). Adverse impacts having only "a minimal effect" on the community, zone plan, or ordinance are insufficient to warrant denial of a variance application on the basis that it did not satisfy the negative criteria. Id. at 165, 603 A.2d 30. Thus, in determining whether to issue a variance for an inherently *1132 beneficial use, a board should "weigh the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good." Id. at 166, 603 A.2d 30. Weighing the criteria in this way makes "it more difficult for municipalities to exclude inherently beneficial uses," but allows for exclusion where the detriment outweighs the benefit to the public good. Ibid. (quoting Baptist Home of S. Jersey v. Borough of Riverton, 201 N.J.Super. 226, 247, 492 A.2d 1100 (App.Div.1985)).
The board contends, however, that after a municipality attains its fair share of affordable housing pursuant to the FHA and its concomitant regulations, affordable housing in that municipality is no longer entitled to inherently beneficial use status. In support of that contention, the Board cites to Mount Laurel II, supra, 92 N.J. at 219, 456 A.2d 390, in which the Court assured municipalities that they were "not... required to provide more than their fair share" of affordable housing. The Court stated:
Once a municipality has ... provide[d] a realistic opportunity for the construction of its fair share of lower income housing, the Mount Laurel doctrine requires it to do no more.... Mount Laurel is not an indiscriminate broom designed to sweep away all distinctions in the use of land. Municipalities may continue to reserve areas for upper income housing, may continue to require certain community amenities in certain areas, may continue to zone with some regard to their fiscal obligations: they may do all of this, provided that they have otherwise complied with their Mount Laurel obligations.
[Id. at 259-60, 456 A.2d 390.]
In light of this language, and based on its interpretation of the FHA and case law, the Board claims that because the Township has met its fair share obligation, it no longer has a need for low or moderate income housing and, consequently, that type of housing is no longer inherently beneficial so as to qualify as a special reason to support a use variance. We reject that argument.
The public policy of this State has long been that persons with low and moderate incomes are entitled to affordable housing. In DeSimone v. Greater Englewood Housing Corporation No. 1, 56 N.J. 428, 442, 267 A.2d 31 (1970), a pre-MLUL decision, Justice Hall sets forth in no uncertain terms that the public policy of New Jersey is "to provide safe, sanitary and decent housing, to relieve and replace substandard living conditions or to furnish housing for minority or underprivileged segments of the population outside of ghetto areas." The Court concluded that this type of housing constituted a special reason upon which to ground a use variance. Ibid. In Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel (Mount Laurel I), 67 N.J. 151, 178, 336 A.2d 713, cert. denied, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975), the Court came to substantially the same conclusion, stating: "There cannot be the slightest doubt that shelter, along with food, are the most basic human needs."
Subsequent court decisions reaffirmed the proposition that satisfying low income housing needs inherently serves the general welfare. Holmdel Builders Ass'n v. Twp. of Holmdel, 121 N.J. 550, 568, 583 A.2d 277 (1990) ("Housing needs are clearly related to the general welfare under the zoning laws."); Riese-St. Gerard Hous. Corp. v. City of Paterson, 249 N.J.Super. 205, 215, 592 A.2d 270 (App.Div.1991) (holding that low income senior citizen housing inherently serves the general welfare); Homes of Hope, Inc. v. Mount Holly Twp. Zoning Bd. of Adjustment, 236 N.J.Super. 584, 588, 566 A.2d 575 (Law *1133 Div.1989) ("[H]ousing accommodations for the underprivileged at a reduced cost makes an important contribution to the general welfare."); Borough of Roselle Park v. Twp. of Union, 113 N.J.Super. 87, 89, 98, 272 A.2d 762 (Law Div.1970) (finding that three-story senior citizens housing project inherently served the public good).
Professor William M. Cox, one of the State's leading commentators on zoning and land use issues, concisely stated the following: "[I]t [is] beyond dispute that provision of affordable housing for low and moderate income persons [is] an absolute essential in the promotion of the general welfare required in all local land use regulation[s]." William M. Cox, New Jersey Zoning and Land Use Administration, § 34-7.1 at 772 (2009). And, public housing "inherently promote[s] the general welfare without reference to its proposed location." Id. at § 7-5.1 at 208.
Moreover, a municipality has a constitutional obligation to provide realistic housing opportunities for people of low and moderate income. See, e.g., Mount Laurel II, supra, 92 N.J. at 208-09, 214-15, 221-22, 456 A.2d 390. Thus, municipal land use regulations must "provide the requisite opportunity for a fair share of the region's need for low and moderate income housing." Id. at 208, 456 A.2d 390.
To attain this goal, the FHA creates a process for a municipality to obtain "substantive certification," which provides a mechanism for a municipality to meet its constitutional obligation to make affordable housing available. N.J.S.A. 52:27D-314. The process terminates in a COAH finding that the municipality's land use regulations are in compliance with the municipality's fair share obligations. Ibid. After certification is obtained, the presumption of validity of local ordinances is reimposed, N.J.S.A. 52:27D-317, and the municipality is provided a six-year moratorium on exclusionary zoning litigation. N.J.S.A. 52:27D-322; N.J.A.C. 5:93-1.3. Further, after a municipality receives its substantive certification and effects construction of the affordable housing units, it may amend "its affordable housing element or zoning ordinances without the approval of [COAH]." N.J.S.A. 52:27D-311. Once a municipality has met its constitutional obligation, it is no longer required by statute to provide additional affordable housing, and may proceed to amend its zoning ordinances, free of COAH oversight, in order to eliminate those areas set aside for use in fulfilling its fair share obligation. Ibid.
Put simply, the certification process focuses on a municipality's fair share of affordable housing as it relates to the constitutionality of existing ordinances and the general zoning plan. After a municipality receives its substantive certification and builds the units, COAH oversight of the municipality's zoning ordinance ends.
A municipal land use board serves a different function in considering an application for a use variance. The board's obligation is to accommodate individual situations that may require relief from the strict confines of a zoning ordinance applicable in a specific zoning district. Twp. of Dover v. Bd. of Adjustment of Dover, 158 N.J.Super. 401, 412, 386 A.2d 421 (App. Div.1978). The inherently beneficial use doctrine provides relief to individual applicants in "particular cases" that the board reviews. N.J.S.A. 40:55D-70.
A municipality's compliance with COAH regulations does not change the necessary site-specific analysis necessary for a "d" variance. Compliance protects the municipality from litigation and a builder's remedy, see N.J.S.A. 52:27D-328 (allowing for court-imposed remedy to require a municipality to make provision for low or moderate income households), but it does not impact the public policy of this State that low and moderate income affordable housing *1134 promotes the general welfare and constitutes a special reason to support a "d" variance. Put another way, that a municipality has received its substantive certification has no effect on whether the construction of "safe, sanitary and decent housing," DeSimone, supra, 56 N.J. at 442, 267 A.2d 31, to replace substandard living conditions, continues to foster the general welfare and constitutes a special reason upon which to obtain a use variance. The principles espoused by Justice Hall in DeSimone remain applicable even after COAH acknowledges that a municipality has met or exceeded its fair share obligation.
A COAH certification does not mean that a municipality has reached a limit for affordable housing. Neither the FHA, nor Mount Laurel I or II, explicitly or implicitly supports the Board's argument that once a municipality's Mount Laurel obligation has been fulfilled, a need for low or moderate income housing no longer exists. It is beyond question that even if a municipality meets its Mount Laurel obligation, substandard housing will continue to exist.[1] Providing affordable housing to meet that need, on a case-by-case basis, continues to foster the general welfare, regardless of a COAH certification, so as to constitute a special reason to satisfy the positive criteria. The "[g]eneral welfare, as that concept is used in the determination of whether special reasons exist under [N.J.S.A. 40:55D-70d] for granting a use variance, comprehends the benefits not merely within municipal boundaries but also those to the regions of the State relevant to the public interest to be served." Kunzler v. Hoffman, 48 N.J. 277, 288, 225 A.2d 321 (1966).
In sum, we affirm the trial court and remand to the Board for consideration of Homes of Hope's variance application in light of its inherently beneficial use status.
CHAMBERS, J.A.D., concurring.
While I concur in the majority opinion, I make the following observations.
Both the Mount Laurel litigation that led to the Fair Housing Act (FHA), N.J.S.A. 52:27D-301 to -329.4, and the case law holding that affordable housing is an inherently beneficial use in the context of a "d" variance application address the same underlying problem, namely the need for affordable housing in the State. See S. Burlington County N.A.A.C.P. v. Twp. of Mount Laurel, 67 N.J. 151, 157-61, 171-74, 180-81, 336 A.2d 713 (recognizing the need for affordable housing and providing, in response to zoning practices excluding affordable housing, that, as a matter of state constitutional law, every developing municipality has an obligation to provide, through its land use regulation, a realistic opportunity for the provision of its fair share of the regional need for affordable housing), cert. denied and appeal dismissed, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975) (Mount Laurel I); S. Burlington County N.A.A.C.P. v. Twp. of Mount Laurel, 92 N.J. 158, 215, 456 A.2d 390 (1983) (among other holdings, extending to all municipalities the obligation "to provide a realistic opportunity for a fair share of the region's present and prospective low and moderate income housing need") (Mount Laurel II); see also DeSimone v. Greater Englewood Hous. Corp. No. 1, 56 N.J. 428, 436, 442, 267 A.2d 31 (1970) (concluding, in a case concerning a municipality with blighted substandard housing, that affordable housing was an inherently beneficial use in the context of a use variance application).
*1135 In the interest of addressing this need, both the builder's remedy applicable under Mount Laurel principles, Mount Laurel II, supra, 92 N.J. at 218, 279-81, 456 A.2d 390, and Oakwood at Madison, Inc. v. Twp. of Madison, 72 N.J. 481, 548-51, 371 A.2d 1192 (1977), and the treatment of affordable housing as an inherently beneficial use in a "d" variance application under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-70(d), Sica v. Bd. of Adjustment of Wall, 127 N.J. 152, 165, 603 A.2d 30 (1992), are devices allowing zoning ordinances to be overridden in order to help meet the need for affordable housing. In doing so, they run contrary to the strong legislative policy in favor of land use planning through the zoning process. See William M. Cox, New Jersey Zoning and Land Use Administration § 7-4.1 at 180 (2009) (stating that because of the "strong legislative policy favoring land use planning by ordinance rather than by variance, the grant of a `d' variance will always be the exception rather than the rule"); see also Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 323, 704 A.2d 1271 (1998) (noting that an applicant seeking a "d" variance for an inherently beneficial use has a "significantly lessened" burden of proof).
Addressing this tension between the builder's remedy and the preference for land use planning by zoning, the State, through the FHA and its related regulations, has provided an elaborate mechanism to calculate the need for affordable housing and to allocate that need among municipalities. N.J.S.A. 52:27D-301 to -329.4; N.J.A.C. 5:92-1.1 to 5:97-10.5. The FHA allows a municipality to submit to the Council on Affordable Housing (COAH) a fair share housing plan including any fair share housing ordinance and a housing element "designed to achieve the goal of access to affordable housing to meet present and prospective housing needs, with particular attention to low and moderate income housing." N.J.S.A. 52:27D-309 to -310. The housing element must demonstrate that the municipality will provide a realistic opportunity for the provision of its fair share of affordable housing and that its land use and other relevant ordinances have been revised to provide for affordable housing. N.J.S.A. 52:27D-311. If this criteria is met, COAH will grant substantive certification. N.J.S.A. 52:27D-314. Once a municipality has obtained substantive certification, it has some protection from the builder's remedy, in that its housing element and implementing ordinances are presumed valid provided the municipality agrees to the review and mediation process in N.J.S.A. 52:27D-316. N.J.S.A. 52:27D-317(a). In this way, a procedure is in place to provide for the municipality's fair share of affordable housing and to allow its development in the municipality through planned zoning.
The FHA, however, does not make the COAH determinations unassailable. A municipality with substantive certification may still have its housing element and implementing ordinances declared invalid if the challenger shows by clear and convincing evidence that they "do not provide a realistic opportunity for the provision of the municipality's fair share of low and moderate income housing after allowing for the implementation of any regional contribution agreement approved by [COAH]." Ibid. Also, COAH must be made a party to the litigation. N.J.S.A. 52:27D-317(c). Thus, the Legislature provided a mechanism for a builder to challenge the COAH determinations.
No provision in either the FHA or the MLUL addresses the circumstance where a municipality has actually achieved its fair share of affordable housing and the impact that circumstance has on a "d" variance application. Certainly, in balancing the *1136 policy in favor of land use development by ordinance rather than by variance against the desirability of providing for affordable housing, it is not illogical to conclude that once a municipality has actually provided its fair share of affordable housing, further affordable housing projects need not retain their status as inherently beneficial uses for the purpose of a "d" variance application. Rather, an affordable housing provider seeking to build outside the appropriate zone would have to meet the usual requirements for a "d" variance. However, the Legislature has not made this determination in either the FHA or the MLUL.
Further, the Board is seeking a per se rule holding that once a municipality has provided its fair share of affordable housing under the FHA, further affordable housing is no longer an inherently beneficial use for purposes of a "d" variance application. Such a rule would provide no mechanism for an affordable housing provider to challenge the COAH determinations, similar to those present in the FHA. Whether such a mechanism is desirable is a matter for the Legislature to determine should it decide to provide that affordable housing loses its status as an inherently beneficial use in municipalities that have achieved their fair share of affordable housing.
As the statutes now stand and as more fully explained in the majority opinion, the FHA and MLUL operate independently. Neither the FHA nor the MLUL address the consequences of a municipality achieving its fair share upon a "d" variance application for affordable housing. As a result, under current law, affordable housing retains its status as an inherently beneficial use in a "d" variance application.
NOTES
[1] There remains a statewide need of 115,000 affordable housing units for the years between 1999 and 2018. See N.J. Dep't of Cmty. Affairs, COAH Fact Sheet, http://www.state.nj. us/dca/affiliates/coah/reports/factsheet.html (last visited July 2, 2009).