32 A.3d 225

THE SALT & LIGHT COMPANY, INC., PLAINTIFF–RESPONDENT, AND MARYANN HELMER, PLAINTIFF/INTERVENOR–RE-SPONDENT, v. WILLINGBORO TOWNSHIP ZONING BOARD OF ADJUSTMENT, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 7, 2011—Decided December 19, 2011.

Before Judges PARRILLO, ALVAREZ and SKILLMAN.

*Matthew B. Wieliczko* argued the cause for appellant (*Zeller & Wieliczko,* attorneys; *Mr. Wieliczko* and *Deena M. Greble,* on the briefs).

*Patrick F. McAndrew* argued the cause for respondent The Salt & Light Company, Inc.

Respondent Maryann Helmer has not filed a brief.

The opinion of the court was delivered by

SKILLMAN, J.A.D. (retired and temporarily assigned on recall).

This appeal involves a board of adjustment's denial of an application for a use variance for construction of a duplex to provide transitional housing for two homeless families in a neighborhood zoned exclusively for single-family residences. We conclude that even though the proposed duplex for the homeless would be an inherently beneficial use that satisfies the positive criterion for a use variance, the board of adjustment did not abuse its discretion in determining that the public benefit to be derived from this proposed duplex was outweighed by the detrimental effect upon the integrity of the zoning plan that would result from construction of a two-family residence in an area zoned exclusively for single-family residences.

I.

Plaintiff Salt & Light is a non-profit organization that provides transitional housing for homeless families. Plaintiff owns a one-fifth acre lot in a Willingboro neighborhood zoned exclusively for single-family residences. The lot was formerly occupied by a four-bedroom, single-family house that plaintiff used to provide transitional housing for single homeless families. However, this house was severely damaged by fire in November 2009 and had to be demolished.

Plaintiff proposed to replace this house with a duplex containing two, two-bedroom residences for two homeless families. Each residence would contain a separate kitchen and bathroom. Because single-family residences are the sole permitted use in the zoning district where plaintiff's lot is located, plaintiff applied to the Willingboro Board of Adjustment for a use variance.

At the hearing on the application, plaintiff's executive director, Kent Pipes, testified that there are currently more single-parent homeless families with two to three children than two-parent homeless families with a large number of children. Consequently, he determined that plaintiff could better serve the needs of the homeless by providing two, two-bedroom residences for two small homeless families rather than a single four-bedroom residence for one large homeless family. He also testified that the proposed two, two-bedroom units would have the capacity for the same number of residents as had formerly occupied the single four-bedroom unit (approximately six to eight).

Plaintiff's planner, Robert Hall, testified that the proposed duplex would be slightly larger than the single-family house that formerly occupied the lot (2,100 square feet compared with 1,800 to 1,850 square feet), but that it would fully comply with the sideyard and other bulk requirements of the zoning ordinance. Hall also testified that the duplex would serve the "specialized needs" of the homeless for adequate housing and thus serve the public good.

A number of members of the public spoke in opposition to the application, contending among other things that the proposed duplex would conflict with the current development of the neighborhood, which is zoned for and occupied exclusively by single-family residences.

At the conclusion of the hearing, the Board voted to deny the application on the ground that plaintiff had failed to satisfy either the positive or negative criteria for the grant of a use variance. In particular, the Board found that the proposed duplex would be "located in a single-family residential zone ... in the middle of a

block containing only single-family homes" and therefore "would constitute a substantial detriment to the neighborhood." The Board also noted that "Willingboro was built many years ago as a grouping of single-family houses" and that "there are no duplex homes in the Township."

Plaintiff appealed the denial of its application to the Law Division. While acknowledging the deference a court is supposed to extend to a board of adjustment's denial of a use variance, the trial court reversed the Board's denial and held that plaintiff was entitled to a variance for the proposed duplex. Relying upon our decision in *Homes of Hope, Inc. v. Eastampton Township Land Use Planning Board,* 409 *N.J.Super.* 330, 976 *A.*2d 1128 (App.Div. 2009), the court concluded that transitional housing for the homeless is an "inherently beneficial use" and therefore plaintiff satisfied the positive criterion for a use variance. The court also concluded that plaintiff had satisfied both negative criteria for a use variance. In rejecting the Board's conclusion that construction of plaintiff's proposed duplex in a single-family zoning district would "substantially impair the intent and the purpose of the zone plan and zoning ordinance," the court stated: "[N]aturally a duplex in a single[-]family residential home will have some tendency to impair the single-family home characteristic of the neighborhood. But ... there is no evidence of increased density, visual impairment or diminishment in property values, or any other detriment aside from the fact that the unit accommodates two families."

## II.

An application for a use variance is governed by *N.J.S.A.* 40:55D–70(d), which provides in pertinent part:

> The board of adjustment shall have the power to:
>
> d. In particular cases for special reasons, grant a variance to allow departure from [zoning] regulations ... to permit: (1) a use or principal structure in a district restricted against such use or principal structure,....
>
> ....

No variance or other relief may be granted under the terms of this section, including a variance or other relief involving an inherently beneficial use, without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.

The "special reasons" requirement of *N.J.S.A.* 40:55D–70(d) is referred to as the "positive" criterion for a use variance and the "without substantial detriment to the public good" and "will not substantially impair the intent and the purpose of the zone plan and zoning ordinance" requirements are referred to as the "negative" criteria. *Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment,* 152 *N.J.* 309, 323, 704 *A.*2d 1271 (1998).

If a proposed use qualifies as an "inherently beneficial" use, the burden of proof of an applicant for a use variance is "significantly lessened" with respect to both the positive and negative criteria. *Ibid.* "An inherently beneficial use presumptively satisfies the positive criteria[,]" and the negative criterion that the use "will not substantially impair the intent and the purpose of the zone plan and zoning ordinance" is not subject to the "enhanced quality of proof" required under *Medici v. BPR Co.,* 107 *N.J.* 1, 21–24, 526 *A.*2d 109 (1987).[1] *Smart SMR of N.Y., supra,* 152 *N.J.* at 323, 704 *A.*2d 1271. Instead, the satisfaction of the negative criteria involves weighing the evidence relating to the positive and negative criteria under the procedures set forth in *Sica v. Board of Adjustment of Township of Wall,* 127 *N.J.* 152, 165–66, 603 *A.*2d 30 (1992), which are discussed in greater detail later in this opinion.

We agree with the trial court that the duplex for transitional housing for the homeless that plaintiff proposes to construct would constitute an inherently beneficial use. However, we conclude that the court erred in rejecting the Board's determination

1 This "enhanced quality of proof" is not required with respect to the negative criterion "that the variance can be granted 'without substantial detriment to the public good.' " *Id.* at 22 n. 12, 526 *A.*2d 109.

that plaintiff failed to satisfy the negative criteria for a variance for this proposed use.

A.

In *Homes of Hope, supra,* 409 *N.J.Super.* at 336, 976 *A.*2d 1128, we reaffirmed that "[a]ffordable housing is an inherently beneficial use." In that opinion, we rejected an argument that once a municipality has satisfied the obligation to provide its fair share of affordable housing under the Fair Housing Act (FHA), *N.J.S.A.* 52:27D–301 to –329.19, a proposal to construct additional affordable housing no longer qualifies as an inherently beneficial use. *Id.* at 336–40, 976 *A.*2d 1128. We concluded that even after a municipality has complied with the FHA, "the construction of 'safe, sanitary and decent housing' ... to replace substandard living conditions, continues to foster the general welfare and constitutes a special reason upon which to obtain a use variance." *Id.* at 339, 976 *A.*2d 1128 (quoting *DeSimone v. Greater Englewood Hous. Corp. No. 1,* 56 *N.J.* 428, 442, 267 *A.*2d 31 (1970)).

The Board acknowledges that transitional housing for the homeless would ordinarily constitute an inherently beneficial use. However, the Board argues that because the duplex plaintiff proposes to construct would provide housing for the same number of homeless persons as the single-family house it would replace, the duplex would not be "any more inherently beneficial" than a single-family house that replicated the prior house, and thus, plaintiff failed to satisfy the positive criterion for the grant of a use variance.

We reject this argument. At the hearing before the Board, plaintiff's executive director, Kent Pipes, gave undisputed testimony that there are currently more single-parent homeless families with two or three children than two-parent homeless families with a large number of children, and therefore, the proposed duplex would better serve the needs of the homeless than a single-family house with four bedrooms. Consequently, even though a single-family house with four bedrooms would have the same theoretical

capacity to provide housing for the homeless, the proposed duplex would be more likely to be fully occupied by the homeless and thus would promote plaintiff's charitable mission more effectively.

This does not mean that the similarity between the benefits to the homeless from reconstruction of a single-family house that would conform with the zoning in the area and construction of plaintiff's proposed duplex is irrelevant in determining plaintiff's entitlement to a use variance. However, we conclude that any housing for the homeless is an inherently beneficial use and that the similarity between housing for the homeless that would conform with the applicable zoning regulation and housing for the homeless that would conflict with that zoning is relevant only to a determination of the applicant's satisfaction of the negative criteria for the grant of a use variance, to which we now turn.

B.

In *Sica, supra,* 127 *N.J.* at 165–66, 603 *A.*2d 30, the Court stated that a board of adjustment should engage in the following weighing process in determining whether a proposed inherently beneficial use satisfies the negative criteria of *N.J.S.A.* 40:55D–70(d):

> First, the Board should identify the public interest at stake.
>
> ....
>
> Second, the Board should identify the detrimental effect that will ensue from the grant of the variance.
>
> . . .
>
> Third, in some situations, the local board may reduce the detrimental effect by imposing reasonable conditions on the use.
>
> ....
>
> Fourth, the Board should then weigh the positive and negative criteria and determine whether on balance, the grant of the variance would cause a substantial detriment to the public good.

"Review of the decision of a board of adjustment denying ... a variance [for an inherently beneficial use] because of the failure to satisfy the negative criteria" under the *Sica* weighing process "is

reversible only if arbitrary, capricious and unreasonable." *Id.* at 166–67, 603 *A.*2d 30.

Five years after *Sica,* the Legislature amended *N.J.S.A.* 40:55D–70 by adding a clause which specifically states that the negative criteria apply to an application for a variance for an inherently beneficial use. *L.* 1997, *c.* 145, § 1. Under this amendment, the first sentence of the final paragraph of *N.J.S.A.* 40:55D–70 now states:

> No variance or other relief may be granted under the terms of this section, *including a variance or other relief involving an inherently beneficial use,* without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.
>
> [language added by amendment underscored]

In conditionally vetoing the original version of this amendment, Governor Whitman gave the following explanation of its intent:

> Over the past several years, courts have determined that certain uses are inherently beneficial.... In the courts' view, the determination that a use is inherently beneficial requires that the variance be issued, regardless of the local body's analysis using the MLUL. In effect, the courts have presented this new rule of law as an overriding factor which municipalities must consider when reviewing variance applications....
>
> ....
>
> ... The amendment to the use variance law clarifies that it is not enough for a use variance applicant to prove that the proposed use constitutes an inherently beneficial use; under this bill, an applicant must still prove that the use will not substantially impair the zoning plan. By restoring this balance, municipalities will again be able to evaluate a proposed use on a particular site to ensure that it does not have a negative impact on the overall zoning plan of the community.

Similarly, the leading commentator on New Jersey land use law stated that "although certainly not intended by the Supreme Court [in *Sica* ], many boards and many Law Division judges have tended, once it has been established that the proposed use falls within the 'inherently beneficial' category, to give only slight attention to the negative criteria[,]" and that the purpose of this amendment was "to afford greater assurance to property owners in the immediate vicinity of an 'inherently beneficial' use that their rights to the protection of the zoning ordinance will not lightly be

infringed upon." William M. Cox, *Impact of New Law in "Inherently Beneficial" Uses,* N.J. Planner, July–Aug. 1997, at U–1.

In *Smart SMR of N.Y., supra,* 152 *N.J.* at 324, 704 *A.*2d 1271, the Court concluded, citing this article by Professor Cox, that the 1997 amendment of *N.J.S.A.* 40:55D–70 "substantially codifie[d] the *Sica* balancing test[,]" and that it "serves as a reminder that even with an inherently beneficial use, an applicant must satisfy the negative criteria."

Applying the *Sica* tests in light of the 1997 amendment to *N.J.S.A.* 40:55D–70, we conclude that the Board did not abuse its discretion in concluding that plaintiff failed to satisfy the negative criteria for the grant of a use variance.[2]

The first step in the weighing process required by *Sica* is identification of "the public interest at stake." 127 *N.J.* at 165, 603 *A.*2d 30. Such identification involves a recognition that "[s]ome [inherently beneficial] uses are more compelling than others." *Ibid.* In this case, the proposed duplex containing two, two-bedroom units of transitional housing for the homeless would provide only a marginally greater public benefit than the single four-bedroom unit of transitional housing provided by the house that formerly occupied the lot. The proposed duplex would have the capacity to house the same number of homeless persons as the former single-family house, and even accepting all of plaintiff's proofs, the only public benefit that would be derived from the proposed duplex would be to better serve the current population of homeless families in the Willingboro area than a single-family house with four bedrooms.

The second step in the weighing process required by *Sica* is identification of "the detrimental effect that will ensue from the

2 There is no condition the Board could impose that would mitigate the detrimental effect of the inconsistency between plaintiff's proposed duplex and the single-family zoning of the neighborhood where it would be located. Consequently, the third step in the *Sica* weighing process has no applicability to this case.

grant of the variance." 127 *N.J.* at 166, 603 *A.*2d 30. The detrimental effect of plaintiff's proposed duplex is that it would conflict with the single-family zoning of the neighborhood in which it would be located. Moreover, the neighborhood has been completely built-out in conformity with this zoning with single-family houses on relatively small lots of approximately one-fifth of an acre. Therefore, the detrimental effect of the proposed duplex upon the zoning in the area would be significant.

The final step required by *Sica* is to "weigh the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good." *Id.* at 166, 603 *A.*2d 30. The Board determined that the public benefit to be derived from the replacement of a single four-bedroom residence with two, two-bedroom residences for the homeless was outweighed by the detrimental effect upon the integrity of the zoning plan for exclusively single-family residences that would result from construction of a duplex. In making this determination, the Board found that "Willingboro was built many years ago as a grouping of single-family homes," that plaintiff's proposed duplex would be located "in the middle of a block containing only single-family homes," and that its proposed use for two families "would constitute a substantial detriment to the neighborhood." We are satisfied that this determination was not "arbitrary, capricious, and unreasonable[,]" *id.* at 166–67, 603 *A.*2d 30, and therefore must be sustained.

Accordingly, the final judgment of the Law Division is reversed and the final decision of the Willingboro Board of Adjustment denying plaintiff's application for a use variance is reinstated.