**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5717-18T2

SUNRISE DEVELOPMENT, INC.,

    Plaintiff-Appellant,

v.

PRINCETON ZONING BOARD
OF ADJUSTMENT,

    Defendant-Respondent.

_____

Argued telephonically March 24, 2020 –
Decided June 24, 2020

Before Judges Fisher, Gilson and Rose.

On appeal from the Superior Court of New Jersey, Law
Division, Mercer County, Docket No. L-2518-18.

Matthew Nicholas Fiorovanti argued the cause for
appellant (Giordano Halleran & Ciesla, PC, attorneys;
Matthew Nicholas Fiorovanti and Paul H. Schneider, on
the briefs).

Karen L. Cayci argued the cause for respondent.

PER CURIAM

Plaintiff Sunrise Development, Inc. (Sunrise) appeals from a judgment dismissing its complaint in lieu of prerogative writs, which sought to reverse the denial of its application to the Princeton Zoning Board of Adjustment (Board) for use and bulk variances to build an assisted living facility. Sunrise argues that the Board failed to properly apply the test to determine if a variance for an inherently beneficial use should be granted. We disagree and affirm.

I.

In August 2017, Sunrise applied to the Board seeking approval to develop a multi-unit assisted living facility in Princeton. Thereafter, Sunrise elected to bifurcate its application, by first seeking approval of the use and bulk variances, and then the site plan.

Sunrise proposed to build the facility on four-and-a-half acres of vacant land (Property). The Property is bordered by a shopping mall, office buildings, and residential homes, and it constitutes the only vacant lot in Princeton's Residential Senior Market zoning district (R-SM zone).

The R-SM zone permits housing for people sixty-two years of age and older. The zone allows residential clusters not exceeding eleven units per acre with minimum tract setbacks. The zone also has an affordable housing component, requiring that twenty percent of the for-sale units and fifteen percent

A-5717-18T2

of the rental units be set aside for affordable housing. The Princeton Master Plan identifies the Property as suitable for senior housing because it is adjacent to the Princeton Shopping Center and has access to public transportation, shopping, and medical offices.

An assisted living facility is not a permitted use in the R-SM zone. Accordingly, Sunrise sought use and bulk variances. Initially, Sunrise proposed to build a three-story building, consisting of over 82,000 square feet and 89 units holding 100 beds. While that application was pending, Sunrise offered to revise its plans, proposing two alternatives, including a two-story senior assisted living facility, consisting of 82,000 square feet and 84 units.

On April 25, 2018, May 23, 2018, and October 16, 2018, the Board conducted three hearings on Sunrise's application. Sunrise presented evidence and testimony from its senior vice president of development and investments and several experts, including a consultant on the facility's design, an architect, a planner, and a traffic engineer. The Board also received evidence and heard testimony from the Township's planner, the Township zoning officer, and the municipal traffic consultant. Furthermore, the Board heard and received comments from the public, many of whom opposed the application.

A-5717-18T2

As part of its presentation, Sunrise submitted that there was a substantial need for a senior assisted living facility in Princeton. It analyzed a three-and-a-half-mile radius around the Property and offered testimony that there were over 850 income-qualified senior households and over 4000 income-qualified caregiver households in that area. Sunrise then contended that Princeton had only one existing assisted living facility with 100 units. Consequently, Sunrise submitted that the proposed facility would be an inherently beneficial use.

Sunrise also presented testimony that the bulk and density impact on the surrounding neighborhood could be adequately addressed. In that regard, Sunrise proposed to do landscaping and contended that the Property was in a mixed-use area and that the assisted living facility would have a minimal traffic impact. Sunrise also represented that it was willing to make further revisions to the design of the building during the site plan review in a continuing effort to reduce any negative impact on the adjacent residential neighborhood.

After hearing the testimony and reviewing the evidence submitted, the Board unanimously voted to deny the application. On November 14, 2018, the Board memorialized its action in a written resolution. The Board accepted that the proposed assisted living facility would be an inherently beneficial use, which satisfied the positive criteria for granting a use variance. The Board then applied

4

the balancing analysis set forth in <u>Sica v. Board of Adjustment</u>, 127 N.J. 152 (1992).

In that regard, the Board found that the magnitude of the public interest was not as great as submitted by Sunrise. The Board rejected Sunrise's focus on a three- to five-mile radius around the Property and noted that Mercer County had eleven existing assisted living facilities and there were fifty-four facilities in nearby communities. The Board also noted that Princeton had four other zones that permitted assisted living or nursing homes.

Turning to the detrimental impact, the Board found that the Property is the only vacant site in the R-SM zone. Thus, the Board found that permitting the application would "essentially constitute a rezoning of the Property and an elimination of the R-SM zone." The Board reasoned "that the power to create and eliminate land use zones lies exclusively with the municipal governing body." The Board also found that elimination of the R-SM zone "would have a detrimental impact as it would remove the only vacant site adjacent to the Princeton Shopping Center for use by active seniors." In comparison, the Board noted that the residents of the assisted living facility would not benefit from the Property's unique location because they would be unlikely to leave the facility to use the shopping center.

5

Addressing the density and scale of the proposal, the Board found that the proposed facility would "greatly exceed" the permitted density and floor area ratio for the zone. Consequently, the Board found "that the Property cannot accommodate the mass and scale of the proposed building and that the scale of the building will be incompatible with the surrounding uses." The Board also found that there would be a negative impact on the existing landscape and particularly on the existing mature trees on the Property.

Finally, the Board found that there were no conditions that could be imposed that would effectively eliminate the negative impact. The Board then balanced the positive criteria against the negative criteria and determined that granting the use variances would "substantially impair the zone plan" and zoning ordinance.

In December 2018, Sunrise filed a complaint in lieu of prerogative writs seeking to reverse the Board's decision and have its application approved. The trial court conducted a hearing on July 10, 2019. Shortly thereafter, on July 18, 2019, the court dismissed Sunrise's complaint finding that the Board's denial of the application was not arbitrary, capricious, or unreasonable. The court explained the reasons for its ruling on the record. On that same day, the trial

6

court memorialized its decision in an order of judgment that dismissed Sunrise's complaint with prejudice. Sunrise now appeals from that judgment.

II.

On appeal, Sunrise argues that the Board correctly found that the proposed assisted living facility was an inherently beneficial use, but erred in applying the Sica balancing test. Accordingly, Sunrise argues that the Board failed to properly evaluate the positive and negative criteria and the Board's rejection of the application was therefore arbitrary, capricious, and unreasonable. We disagree.

Zoning board decisions "enjoy a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (citing Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002)). Consequently, "courts ordinarily should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 58-59 (1999).

The party challenging the action of a zoning board carries the burden of demonstrating that the board acted arbitrarily, capriciously, or unreasonably.

7

Dunbar Homes, Inc. v. Zoning Bd. of Adjustment, 233 N.J. 546, 558 (2018) (quoting Grabowsky v. Twp. of Montclair, 221 N.J. 536, 551 (2015)); Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013) (citing Smart SMR of N.Y., Inc. v. Bd. of Adjustment, 152 N.J. 309, 327 (1998)). "A board acts arbitrarily, capriciously, or unreasonably if its findings of fact in support of a grant or denial of a variance are not supported by the record, or if it usurps power reserved to the municipal governing body or another duly authorized municipal official." Ten Stary Dom P'ship, 216 N.J. at 33 (citations omitted). "Even when doubt is entertained as to the wisdom of the [board's] action, or as to some part of it, there can be no judicial declaration of invalidity in the absence of clear abuse of discretion . . . ." Kramer v. Bd. of Adjustment, 45 N.J. 268, 296-97 (1965) (citations omitted).

The Legislature has delegated to municipalities the power to regulate local land use through the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163. An application for a use variance is governed by N.J.S.A. 40:55D-70(d), which allows a variance for "special reasons" if the variance "can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." The "special reasons" requirement of the statute is referred to as the "positive" criteria for a

8

use variance; the requirements that the variance not be detrimental to the public good and not substantially impair the zone plan and ordinance are referred to as the "negative" criteria. Smart SMR, 152 N.J. at 323 (quoting Sica, 127 N.J. at 156); Salt & Light Co., Inc. v. Bd. of Adjustment, 423 N.J. Super. 282, 287 (App. Div. 2011).

An "inherently beneficial use" is one "which is universally considered of value to the community because it fundamentally serves the public good and promotes the general welfare." N.J.S.A. 40:55D-4. If a proposed use qualifies as "inherently beneficial," the burden of proof for a use variance is "significantly lessened" with respect to both the positive and negative criteria. Smart SMR, 152 N.J. at 323. "An inherently beneficial use presumptively satisfies the positive criteria." Ibid. (citing Burbridge v. Minehill Twp., 117 N.J. 376, 394 (1990)). Moreover, "satisfaction of the negative criteria does not depend on an enhanced quality of proof." Id. at 323-24 (citing Sica, 127 N.J. at 160-61).

A variance for an inherently beneficial use is evaluated under the standard set forth in Sica. Advance at Branchburg II, LLC v. Bd. of Adjustment, 433 N.J. Super. 247, 254 (App. Div. 2013); Salt & Light, 423 N.J. Super. at 287. In Sica, the Court identified four factors to be balanced:

> First, the board should identify the public interest at stake. . . .

Second, the [b]oard should identify the detrimental effect that will ensue from the grant of the variance. . . .

Third, in some situations, the local board may reduce the detrimental effect by imposing reasonable conditions on the use. . . .

Fourth, the [b]oard should then weigh the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good.

[127 N.J. at 165-66 (citations omitted).]

We review denial of a variance for an inherently beneficial use under the same standard we review "local land use" decisions generally, reversing them only if arbitrary, capricious, or unreasonable. Id. at 166-67 (citations omitted).

Here, we discern no abuse of discretion by the Board in its application of the Sica test. We find nothing arbitrary, capricious, or unreasonable in the denial of Sunrise's application. The Board expressly stated in its resolution that it was applying the Sica test and it then properly balanced the factors identified by Sica.

The Board first identified the public interest at stake. Such an inquiry involves a recognition that some inherently beneficial uses "are more compelling than others." Id. at 165. In evaluating Sunrise's application, the Board accepted that the assisted living facility would be an inherently beneficial

10

use. The Board did not accept, however, Sunrise's contentions concerning the need for an assisted living facility at the Property. In that regard, the Board expanded the area to be considered and included Mercer County and communities surrounding Princeton.

Contrary to the arguments of Sunrise, there is nothing arbitrary, capricious, or unreasonable about that determination. The Board was not required to accept the opinions offered by Sunrise's experts. Klug v. Planning Bd., 407 N.J. Super. 1, 13 (App. Div. 2009) (citing El Shaer v. Planning Bd., 249 N.J. Super. 323, 330 (App. Div. 1991)); Bd. of Educ. v. Zoning Bd. of Adjustment, 409 N.J. Super. 389, 434 (App. Div. 2009) (citations omitted). Instead, the Board had the right, as it did here, to consider that expert testimony but not accept it.

Moreover, in doing so, the Board was not usurping the authority of the Department of Health, which has statutory authority to determine the need for an assisted living facility. See N.J.S.A. 26:2H-1 to -26; N.J.A.C. 8:36-2.1. Instead, the Board was acting appropriately under the MLUL to evaluate the public interest at stake.

The Board also properly evaluated the second factor in Sica by identifying "the detrimental effect that will ensue from the grant of the variance[s]." 127

N.J. at 166. The Board correctly found that granting the use variances would constitute a "rezoning of the Property" because the entire R-SM zone would be eliminated.

The Board also found that allowing the assisted living facility would effectively eliminate the R-SM zone's purpose, which is to provide housing for active senior citizens. In that regard, the Board noted that the Property was adjacent to the Princeton Shopping Center, which active senior citizens would be likely to use, whereas the residents of an assisted living facility would be unlikely to benefit from the shopping center. The Board also found that the Property could not accommodate the density and size of the proposed assisted living facility and that the proposed building would be "incompatible with the surrounding" area. All those findings of detrimental impact are supported by substantial credible evidence presented during the hearings before the Board. Just as importantly, we discern nothing arbitrary, capricious, or unreasonable concerning the Board's findings and reasoning.

Sunrise argues that the Board effectively abdicated its responsibility when it pointed out that granting the use variances would function as rezoning. We do not construe the Board's reasoning and resolution as that narrow. It was appropriate for the Board to consider the impact on "the zone plan and zoning

ordinance." N.J.S.A. 40:55D-70(d); see also Twp. of N. Brunswick v. Zoning Bd. of Adjustment, 378 N.J. Super. 485, 492 (App. Div. 2005) (citing AMG Assocs. v. Twp. of Springfield, 65 N.J. 101, 109 n.3 (1974)) (holding that when a "variance pertains to a substantial portion of[,] or an entire zone district, a board's variance begins to closely resemble zoning, which is the exclusive province of the municipality"); Victoria Recchia Residential Const., Inc. v. Zoning Bd. of Adjustment, 338 N.J. Super. 242, 253 (App. Div. 2001) (holding that a "[z]oning [b]oard may not rezone by variance"). Moreover, as already discussed, the Board considered more than just the elimination of the R-SM zone.

Turning to the third factor in the Sica test, the Board found that there were no conditions that could be imposed to reduce the detrimental impact. Again, the Board appropriately considered that granting the application would eliminate the R-SM zone. See Salt & Light, 423 N.J. Super. at 291 n.2 (holding that the third factor in the Sica test is not applicable when the proposed use would significantly undermine the zoning plan). The Board also again properly considered that there were no conditions it could impose to reduce the bulk and density of the proposal.

Finally, the Board evaluated the fourth factor in the <u>Sica</u> test by weighing the positive and negative criteria. We discern nothing arbitrary, capricious, or unreasonable in the Board's determination that, on balance, granting the variances would "substantially impair the zone plan . . . and would constitute a rezoning of the Property."

In short, Sunrise incorrectly argues that the Board did not engage in the appropriate evaluation. Sunrise's real argument is that it disagrees with the conclusions the Board reached under the <u>Sica</u> test. Because we find nothing arbitrary, capricious, or unreasonable in the Board's evaluations, we have no basis to reverse the Board. Accordingly, we agree with the trial court and affirm its judgment dismissing Sunrise's complaint with prejudice.

To the extent that we have not discussed Sunrise's remaining arguments, it is because they are without sufficient merit to warrant discussion in this written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-5717-18T2