**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4734-18T2

MICHAEL SAITZ, PAUL LAMB,
BETSY LAMB, MAUREEN LEIDY,
RICHARD CONKLIN, ALANA
DEPRISCO, JERRY DEPRISCO,
MICHAEL J. MADDOLA, RACHEL
GARRITY, RYAN BECKER, WARREN
GROSSMAN, RICHARD GOBER,
ELAINE ROMOLINI, JOANNA
PANG, and JULIANA PANG,

      Plaintiffs-Appellants,

v.

CITY OF VENTNOR PLANNING
BOARD and SHORE INVESTMENT
AND DEVELOPMENT, LLC,

      Defendants-Respondents.

_____

      Argued April 2, 2020 – Decided July 10, 2020

      Before Judges Suter and DeAlmeida.

      On appeal from the Superior Court of New Jersey, Law
      Division, Atlantic County, Docket L-2728-18.

      Scott E. Becker argued the cause for appellants.

Elias T. Manos argued the cause for respondent City of Ventnor Planning Board (Manos Law Firm LLC, attorneys; Elias T. Manos, on the brief).

Brian J. Callaghan argued the cause for respondent Shore Investment and Development, LLC (Callaghan Thompson & Thompson, PA, attorneys; Brian J. Callaghan, on the brief).

PER CURIAM

Plaintiffs appeal from the May 28, 2019 order of the Law Division affirming the decision of defendant City of Ventnor Planning Board (Board) granting defendant Shore Investment and Development, LLC (Shore Investment) a use variance for construction of a duplex on its property. We affirm.

I.

The following facts are derived from the record. Shore Investment owns a parcel in the city's Residential Redevelopment 2 Zoning District. The zone is part of a redevelopment plan adopted by the city to address overcrowding and the scarcity of on-street parking, revitalize the area, increase the amount of air, light, and open space, and reduce overall residential density.[1] The zone permits the following uses:

---

[1] A 2019 amendment to the redevelopment plan removed reducing residential density as a goal of the plan.

[s]ingle-family detached dwellings; [t]wo-family dwellings in existence at the time of the adoption of this [r]edevelopment [p]lan; [t]ownhouses; [c]onversion of existing multifamily structures to apartments for the elderly; [c]onversion of existing multifamily structures to [b]ed & [b]reakfast [g]uesthouses; [s]urface-level off-street parking areas owned, operated or leased by the City of Ventnor; [b]ed & [b]reakfast Inn[s]; [s]enior [a]partment buildings; [and] [a]ssisted [l]iving [f]acility.

When Shore Investment acquired the property, it was improved with a deteriorating, non-flood-compliant, one-family bungalow. The property had not been maintained and was overgrown. Shore Investment applied to the Board for a use variance under N.J.S.A. 40:55D-70(d) to replace the bungalow with a two-story duplex, raised to satisfy federal flood damage prevention regulations over ground-floor parking and storage. The proposed structure would meet all side-yard and front-yard setbacks applicable to a single-family home, and would be below the maximum permitted lot coverage and building coverage in the zone. It is undisputed the proposed duplex was not a permitted use and required a variance.

At a public meeting of the Board, Shore Investment presented testimony from an engineer and an architect on the feasibility of its development plan. The engineer noted that although the duplex was not a permissible use, there were "a number of multi-family buildings [in the area], some duplexes, some two-

3

families, some more than two-families" and described the parcel as "a blighted piece of property" that "sticks out like a sore thumb" and was in need of redevelopment. There is a ten-unit, multi-family building directly behind Shore Investment's property. The engineer testified that the proposed duplex would promote the general welfare and was particularly well-suited for the neighborhood because of the existing multi-family dwellings, its meeting of open space requirements and lack of effect on density, the four on-site parking spaces, and because it was not a substantial detriment to the purposes of the city's zoning or its residents.

The Board granted the use variance, concluding that "[t]he general area of the subject property contains a mix of uses, including single-family and many dwellings with basement apartments. There is also a multi-family use . . . facing the back of the subject property." In addition, the Board determined the proposed duplex would: (1) promote the general welfare by eliminating an overgrown and dilapidated property and replacing it with a new building with landscaping; (2) secure safety from flooding; (3) provide adequate light, air, and open space; (4) promote the free flow of traffic on account of the on-site parking; and (5) enhance the property's aesthetic. Finally, the Board concluded the duplex's construction would not be a detriment to the public good, as it was no

different in size than a large single-family home permitted in the zone, and would not impair the zoning scheme because there are many multi-family units already in the area as pre-existing uses.

Plaintiffs reside in the neighborhood in which Shore Investment's property is located. They filed a complaint in lieu of prerogative writ in the Law Division seeking to set aside the Board's decision.[2]

In a comprehensive oral opinion, Assignment Judge Julio L. Mendez affirmed the Board's decision, finding a sufficient basis in the record for its finding and concluding its grant of the variance was consistent with the law and not arbitrary, capricious, or unreasonable. Judge Mendez found the record supports the Board's determination that the general welfare was served by turning a blighted property to one that is aesthetically pleasing and utilizes on-site parking. The judge also agreed with the Board's determination that the proposed use was consistent with the character of the neighborhood, and thus, no substantial detriment to the public good could be identified as a result of the development of the property.

---

[2] Although the Board also granted certain bulk variances and design waivers to Shore Investment, plaintiffs challenge only the Board's grant of a use variance.

This appeal followed. Plaintiffs make the following arguments for our consideration:

POINT I

NO SPECIAL REASONS W[E]RE PRESENTED TO JUSTIFY THE GRANTING OF A USE VARIANCE BY THE PLANNING BOARD.

POINT II

THE ACTION OF THE BOARD AMOUNTS TO A REZONING OF THE AREA CONTRARY TO THE EXPRESSED WILL OF THE GOVERNING BODY.

II.

Our review of a local planning board's action is limited. The Board's decision may be set aside only if it was arbitrary, capricious, or unreasonable. Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002); Medici v. BPR Co., 107 N.J. 1, 15 (1987). A planning board's actions are presumed to be valid because of its knowledge of local conditions, and the burden of proving otherwise rests with the challenging party. Burbridge v. Twp. of Mine Hill, 117 N.J. 376, 385 (1990). "The proper scope of judicial review is not to suggest a decision that may be better than the one made by the board, but to determine whether the board could reasonably have reached its decision on the record." Jock v. Zoning Bd. of Adjustment, 184 N.J. 562, 597 (2005).

6

The Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, "gives full authority to municipal boards of adjustment to grant use variances on the affirmative vote of five members." Medici, 107 N.J. at 19. First, the MLUL gives a board the authority to "grant a variance to allow departure from [zoning] regulations" upon a showing of "special reasons" to justify the variance. N.J.S.A. 40:55D-70(d). Second, a use variance will not be granted "without a showing that such variance . . . can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." Ibid.[3]

When the application does not concern an inherently beneficial use, a general use variance application requires: (1) satisfying the positive criteria by showing special reasons as to why "the use promotes the general welfare because the proposed site is particularly suitable for the proposed use"; and (2) satisfying the negative criteria by proving "the variance can be granted without substantial detriment to the public good" and demonstrating "through an enhanced quality of proof . . . that the variance sought is not inconsistent with the intent and

---

[3] The "special reasons" requirement is commonly referred to as the "positive criteria," while the substantial detriment to the public good and zone plan impairment are the "negative criteria." Salt & Light Co. v. Willingboro Twp. Zoning Bd. of Adjustment, 423 N.J. Super. 282, 287 (App. Div. 2011).

purpose of the master plan and zoning ordinance." Smart SMR v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 323 (1998) (internal quotations omitted). The enhanced quality of proof on the negative criteria requires "specific findings by the board of adjustment . . . ." Medici, 107 N.J. at 4.

Determining whether a parcel is particularly suitable for the proposed use is inherently site-specific, Stop & Shop Supermarket Company v. Board of Adjustment, 162 N.J. 418, 431 (2000), and signals that "strict adherence to the established zoning requirements would be less beneficial to the general welfare." Price v. Himeji, LLC, 214 N.J 263, 287 (2013) (citing Kramer v. Bd. of Adjustment, 45 N.J. 268, 290-91 (1965)); see also Burbridge, 117 N.J. at 387-88 (finding aesthetic improvement to a property as a permissible special reason). As stated by the Court in Price,

> the inquiry concerning whether a proposed use variance should be granted . . . is an inherently fact-specific and site-sensitive one. Although the availability of alternative locations is relevant to the analysis, demonstrating that a property is particularly suitable for a use does not require proof that there is no other potential location for the use[,] nor does it demand evidence that the project "must" be built in a particular location. Rather, it is an inquiry into whether the property is particularly suited for the proposed purpose, in the sense that it is especially well-suited for the use, in spite of the fact that the use is not permitted in the zone. Most often, whether a proposal meets that test will depend on the adequacy of the record compiled

before the zoning board and the sufficiency of the board's explanation of the reasons on which its decision to grant or deny the application for a use variance is based.

[214 N.J. at 292-93.]

In addition, demonstrating that a variance can be granted without substantial detriment to the public good "focuses on the effect that granting the variance would have on the surrounding properties." Id. at 286. Showing the variance will not substantially impair the intent and purpose of the zoning scheme involves "reconcil[ing] the grant of the variance for the specific project at the designated site with the municipality's contrary determination about the permitted uses as expressed through its zoning ordinance." Ibid.

Having carefully reviewed plaintiffs' arguments in light of the record and applicable legal principles, we affirm the May 28, 2019 order for the reasons stated by Judge Mendez in his thorough and well-reasoned oral opinion.

We add the following comments. The record before the Board included evidence that Shore Investment's property was well suited for the construction of a duplex, given that the structure would meet all open space and light requirements of the zone and would be no larger than a single-family home permitted on the site by zoning regulations. In addition, there are existing multi-

family uses in the property's neighborhood, including immediately adjacent to the rear of the property.

The record contains no evidence of a substantial detriment to the public good from development of the property with a duplex. To the contrary, the proposed construction would replace a dilapidated bungalow on an overgrown lot with a new home on a landscaped plot with on-site parking, lessening the parking density burden addressed in the city's redevelopment plan. The new structure also meets federal flood damage prevention regulations, further benefiting the neighborhood. Finally, there is support in the record for the Board's determination that the duplex would not substantially impede the intent and purpose of the zone, which contemplates existing multi-family uses, and a variety of uses other than single-family homes.

To the extent we have not specifically addressed plaintiffs' remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4734-18T2