813 A.2d 1282 (2003)
357 N.J. Super. 105
The SPINNAKER CONDOMINIUM CORPORATION, Plaintiff-Appellant/Cross-Respondent,
v.
ZONING BOARD OF the CITY OF SEA ISLE CITY, Defendant-Respondent/Cross-Appellant, and
City of Sea Isle City, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 2002.
Decided January 23, 2003.
*1284 Norman L. Zlotnick argued the cause for appellant/cross-respondent (Mairone, Biel, Zlotnick & Feinberg, attorneys; Mr. Zlotnick and Rosemary A. Cain-Wallace, Atlantic City, on the brief).
Ellen Nicholson Byrne, Sea Isle, argued the cause for respondent/cross-appellant (Ms. Nicholson Byrne, on the brief).
Before Judges HAVEY, WELLS and PAYNE.
*1283 The opinion of the court was delivered by HAVEY, P.J.A.D.
Plaintiff, the Spinnaker Condominium Corporation (Spinnaker), leased space on its roof to Sprint Spectrum L.P. (Sprint) for the location of nine antennae and related equipment, the purpose of which was to provide wireless telecommunication services to Sprint's customers. Sprint applied to defendant Zoning Board of the City of Sea Isle City for a conditional-use variance, N.J.S.A. 40:55D-70d(3), in order to construct the facility. The application was denied. Sprint declined to appeal, having found an alternate site for its facility. Spinnaker filed this action in lieu of prerogative writs challenging the Board's denial.
By judgment dated May 10, 2001, the trial court upheld the Board's action. However, the court deleted that portion of the judgment, prepared by the Board's attorney, addressing the dismissal of Spinnaker's complaint based on its lack of standing to appeal. Spinnaker now appeals the trial court's affirmance of the Board's action. The Board cross-appeals, arguing that Spinnaker's complaint should have been dismissed for lack of standing. We agree with the City that Spinnaker had no standing to challenge the Board's denial, and therefore reverse.
Since we are reversing on standing grounds, we need not recite the facts at length. Suffice it to say that on November 5, 1998, Spinnaker and Sprint entered into a written agreement under which Sprint leased exterior building space on the roof of the condominium complex for installation of up to nine antennae and supporting equipment. Sprint's application for a zoning permit was denied on the basis that the application failed to meet the conditions of Ordinance No. 1038, which governed the use of ground-mounted television satellite dishes. Sprint applied for a variance. With the agreement of the Board's attorney, Sprint's application to the Board was treated as seeking a conditional-use variance under N.J.S.A. 40:5570d(3). As we understand it, the two "conditional-use" standards not met by Sprint pertained to the number of antennae proposed, and the condition that all satellite dish structures be on ground level.[1]
During the Board hearing, Sprint's experts described its wireless telecommunications system, the range of its existing facilities and the presence of "service gaps" in the Sea Isle City area. The *1285 Board's resolution denying the application offered no analysis of the proofs under the standards applicable to conditional-use variances. See Cell South of New Jersey, Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 85-87, 796 A.2d 247 (2002); Coventry Square, Inc. v. Zoning Bd. of Adjustment, 138 N.J. 285, 298-99, 650 A.2d 340 (1994). Nevertheless, Sprint did not appeal the decision because it subsequently entered into a long-term lease with the City to install its antennae on the City's water tower.
The trial court upheld the Board's denial, concluding that the decision was not arbitrary because it was reasonably based on the Board's concern with the aesthetic impact of the antennae on the surrounding area. It also observed that the Board "was aware" of Spinnaker's location and had "referenced the fact that Spinnaker was not the ideal location for the antennae." The court also appeared to be persuaded by the Board's argument that Spinnaker had no standing to appeal. The court disagreed with Spinnaker's claim that if the Board's decision were reversed and the variance were approved, another telecommunications provider that leased from Spinnaker could install its equipment as a permitted use. It observed that zoning board decisions are based upon the specific facts of each zoning application, and that any new lease with another telecommunications provider would require a new application. However, for reasons that are unclear, the trial court deleted that portion of the judgment providing for dismissal of Spinnaker's complaint for lack of standing.
We address only the standing issue raised by the Board's cross-appeal.
Rule 4:26-1 provides that "[e]very action may be prosecuted in the name of the real party in interest...." This "real party in interest rule is ordinarily determinative of standing to prosecute an action." Pressler, Current N.J. Court Rules, comment 2 on R. 4:26-1 (2003). Standing is a threshold justiciability determination of whether the plaintiff is entitled to initiate and maintain an action on the matter before the court. In Re Adoption of Baby T., 160 N.J. 332, 340, 734 A.2d 304 (1999). The litigant must have a sufficient stake in the matter and face "[a] substantial likelihood of some harm" from an unfavorable decision. New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, 82 N.J. 57, 67, 411 A.2d 168 (1980). The litigant must show that "there is genuine adverseness between the parties in terms of the litigated controversy." Id. at 68, 411 A.2d 168. New Jersey courts generally have set a fairly low threshold for standing, and have afforded litigants the benefits of liberal interpretations of the standing requirements. Triffin v. Somerset Valley Bank, 343 N.J.Super. 73, 81, 777 A.2d 993 (App.Div.2001). Ordinarily, however, a litigant does not have standing to assert the rights of a third party. Jersey Shore Med. Center-Fitkin Hosp. v. Estate of Baum, 84 N.J. 137, 144, 417 A.2d 1003 (1980). Moreover, only an aggrieved party may appeal a judgment. Howard Sav. Inst. of Newark v. Peep, 34 N.J. 494, 499, 170 A.2d 39 (1961).
Here, Spinnaker has no standing because it has not suffered a "substantial likelihood of some harm" as a result of the Board's decision. New Jersey State Chamber of Commerce, supra, 82 N.J. at 67, 411 A.2d 168. Spinnaker is not a licensed telecommunications service provider under the Federal Communications Act (FCA). 47 U.S.C.A. § 332. Therefore, the Board's decision does not intrude upon any statutory right held by Spinnaker to install or operate the antennae on its own.
*1286 Moreover, once Sprint chose not to appeal the Board's denial, it presumably terminated its lease with Spinnaker, as was its right under paragraph 11 of the lease agreement. Consequently, any economic interest derived from the lease that was enjoyed by Spinnaker was extinguished upon its termination. Thus, Spinnaker had no financial interest in the outcome of this litigation sufficient to confer standing. See Associates Commercial Corp. v. Langston, 236 N.J.Super. 236, 242, 565 A.2d 702 (App.Div.) ("[a] financial interest in the outcome of litigation is ordinarily sufficient to confer standing"), certif. denied, 118 N.J. 225, 570 A.2d 979 (1989).
Nevertheless, Spinnaker argues that its standing is derived from the definition of "developer" under the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -136. N.J.S.A. 40:55D-4 defines "[d]eveloper" as "the legal or beneficial owner ... of any land proposed to be included in a proposed development". Spinnaker argues that it meets that definition because it is the "legal" owner of the subject property. It reasons further that, as "legal" owner, it would benefit by a reversal of the Board's action and grant of the variance, since "a variance once granted, runs with the land."
Plaintiff is correct that use variances attach to the land and are not personal to the applicant. See Stop & Shop Supermarket Co. v. Board of Adjustment, 162 N.J. 418, 432, 744 A.2d 1169 (2000), and cases cited therein. Thus, the benefit afforded by a use variance "is available to the applicant's successors in title." Id. at 433, 744 A.2d 1169. Upon the grant of a variance and transfer of title, the purchaser takes the land free from those zoning restrictions to which the variance pertains. Id. at 432, 744 A.2d 1169. A rationale for this "widely-accepted principle" of zoning law is "the property-specific focus of the proofs that ordinarily must be elicited to support commercial use variances...." Id. at 431-32, 744 A.2d 1169. In essence, upon satisfaction of the statutory requirements for a variance, "the use or structure allowed becomes a conforming use." Industrial Lessors, Inc. v. City of Garfield, 119 N.J.Super. 181, 183, 290 A.2d 737 (App.Div.), certif denied, 61 N.J. 160, 293 A.2d 390 (1972).
However, an application by a wireless telecommunications provider implicates more than "property-specific" proofs. Stop & Shop Supermarket Co., supra, 162 N.J. at 430-31, 744 A.2d 1169. For example, it is the FCC licensing of the provider itself that generally suffices for the provider "to establish that the use serves the general welfare." Smart SMR of New York, Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 336, 704 A.2d 1271 (1998).
Moreover, a provider's use or conditional-use variance application involves technical and design aspects not ordinarily implicated in other variance applications. As we recently observed:
It is one thing for a zoning board to deny an expansion of a nonconforming dairy on the basis that there was no showing by the applicant that the municipality and surrounding area were dependent upon the expansion to provide adequate milk supply. See Kohl, supra, 50 N.J. at 280, 234 A.2d 385. It is another matter when the board denies a variance application for a telecommunications facility by concluding that the capacity or coverage of existing systems is adequate to service the area without the additional facility proposed by the provider. It seems clear that the siting and design aspects of a telecommunications proposal often involve technical considerations not implicated in other applications.
[Ocean County Cellular Tel. Co. v. Township of Lakewood Bd. of Adjustment, 352 N.J.Super. 514, 523, 800 *1287 A.2d 891 (App.Div.), certif. denied, 175 N.J. 75, 812 A.2d 1108 (2002).]
For example, a wireless telecommunications provider is required to provide reliable services throughout its coverage area. See Sprint Spectrum v. Borough of Upper Saddle River, 352 N.J.Super. 575, 581, 801 A.2d 336 (App.Div.), certif. denied, 174 N.J. 543, 810 A.2d 63 (2002). To achieve this goal, the provider creates a network of individual "`cell sites,' which consist of radio antennae and related equipment that send and receive radio signals to and from customers' cellular phones." Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 491 (2d Cir.1999). Cell "sites" must be high enough to permit successful transmission and receipt of the signal's low-power, high-frequency radio waves. Ibid. Often, additional cell sites must be added as cellular service usage increases. Id. at 492. Inadequate facilities may create "coverage gaps" that may result in inadequate service, static and inability to place calls. Ibid.
Consequently, as a practical matter, when a wireless telecommunications provider applies for a variance, it is seeking relief because of a "coverage gap." Its proofs focus on the need to fill that gap, whether the application involves a traditional nonpermitted use (N.J.S.A. 40:5570d(1)), or a permitted, conditional use (N.J.S.A. 40:55D-70d(3)). Compare Smart SMR of New York, Inc., supra, 152 N.J. at 332, 704 A.2d 1271 (holding that provider had met the "particular suitability" test for a variance involving a nonpermitted use), with Cell South of New Jersey, Inc., supra, 172 N.J. at 85-87, 796 A.2d 247 (provider satisfied less-demanding "positive" criteria standard applicable to conditional-use variances, in part by presenting expert testimony that its proposed tower would improve existing wireless services).[2] In this case, for example, Sprint's consulting engineer testified that without the nine antennae proposed by Sprint "[t]hey would not be able to provide the necessary or the desired level of service to their customers and there would exist a service gap within the Sea Isle City area."
Therefore, contrary to Spinnaker's argument in this case, a conditional-use variance to permit construction of the nine specific antennae proposed by Sprint would not adhere to the land in the traditional zoning sense. This is so because any other wireless telecommunications provider that may lease Spinnaker's facilities will do so because it has its own discrete, coverage gap. Its facility will be designed to be compatible with its own existing network system. The number, size and location of antennae used by the new provider will depend on the nature and extent of the coverage gap in that system and other technical factors relating to its operation. In short, without Sprint, the application denied by the Board lacks technical relevance. Therefore, Spinnaker had no standing to appeal the Board's denial of the application.
Reversed.
NOTES
[1] We have serious reservations whether the Board correctly treated this as a conditionaluse variance. According to Ordinance No. 1038, conditions were imposed for groundmounted television satellite dishes in residential areas based on concerns regarding the dishes' short, squat and immediately noticeable appearance in the landscape. None of the conditions in the ordinance pertain to the technical or siting features of a cellular telecommunications system, or the distinguishing characteristics of the antennae and other hardware installed by Sprint. Television satellite transmission and wireless telecommunications are entirely different uses, requiring different technologies and equipment. Consequently, in our view, the Board should have treated Sprint's application as one for a variance for a nonpermitted use under N.J.S.A. 40:55D-70d(1).
[2] In a challenge to a variance application denial, the provider may also argue that the denial violated federal law. The FCA, 47 U.S.C.A. § 332, provides that local regulation "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." See § 332(c)(7)(B)(i)(II). The denial of a variance application for a telecommunications facility violates this section of the FCA if the provider proves that the denial will result in a "significant gap" in the availability of wireless services, and that its proposal is the least intrusive means to fill that gap. Cellular Tel. Co. v. Zoning Bd. of Adjustment of Ho-Ho-Kus., 197 F.3d 64, 70 (3d Cir.1999). This standard as well focuses on the factsensitive nature of the service gap in the coverage area.