996 A.2d 1054 (2010)
413 N.J. Super. 527
CAMPUS ASSOCIATES L.L.C., Plaintiff-Appellant,
v.
ZONING BOARD OF ADJUSTMENT OF the TOWNSHIP OF HILLSBOROUGH, Defendant-Respondent.
DOCKET NO. A-0690-08T2.
Superior Court of New Jersey, Appellate Division.
Argued February 1, 2010.
Decided June 4, 2010.
*1055 Kenneth E. Meiser, Princeton, argued the cause for appellant (Hill Wallack LLP, attorneys; Mr. Meiser, of counsel; Michael J. Lipari, on the brief).
Mark S. Anderson, argued the cause for respondent (Woolson Sutphen Anderson, P.C., Somerville, attorneys; Mr. Anderson and Jolanta Maziarz, on the brief).
Before Judges RODRÍGUEZ, YANNOTTI[1] and CHAMBERS.
The opinion of the court was delivered by
CHAMBERS, J.A.D.
In this appeal, we consider whether a landowner has standing to appeal the denial of a use variance for its property when the variance application was made by a contract purchaser for the property.
In this case, the contract purchaser for the property sought a use variance in order to construct affordable housing on the property. When the application was denied, the contract purchaser declined to appeal and ended the contract. As a result, the landowner of the property, who intended to pursue the project, filed a complaint in lieu of prerogative writs in the Law Division challenging the denial. The Law Division judge dismissed the complaint on the basis that the landowner did not have standing to prosecute the appeal because it was not the applicant for the variance.
We disagree and reverse. We conclude that the denial of the variance sought by the contract purchaser may be appealed by the landowner provided the application depended on property specific proofs and not factors unique to the applicant.

I
Plaintiff Campus Associates, L.L.C. is the owner of 13.79 acres of property located in an I-3 Light Industrial Zone District in the Township of Hillsborough. In August 2006, it entered into a contract with The Richman Group of New Jersey, L.L.C. (Richman) whereby Richman would apply for the necessary development approvals *1056 to construct affordable housing units on the property pursuant to a public subsidy program known as the low income housing tax credit program. 26 U.S.C.A. § 42; see also In re Tax Credit Application of Pennrose Props., Inc., 346 N.J.Super. 479, 485, 788 A.2d 787 (App.Div.2002) (explaining the program). In the contract, Richman agreed to purchase the property provided the approvals were secured during a specified period of time.
Richman thereafter applied to the Zoning Board of Adjustment of the Township of Hillsborough (the Board) for a use variance and related bulk variances in order to construct eighty-four federal tax credit affordable residential units on the property.[2] By Resolution dated March 26, 2008, the Board denied the application. Among the reasons for denying the application, the Board stated that it was not satisfied that the project was an inherently beneficial use because the proposed development was for moderate income housing only and did not include any low income housing. Richman decided not to pursue an appeal and terminated its contract with plaintiff.
Plaintiff, as owner of the property, filed a timely complaint in lieu of prerogative writs in the Law Division, challenging the Board's denial of the use variance application. Prior to filing an answer, the Board moved under Rule 4:6-2(e) to dismiss the complaint for failure to state a claim upon which relief can be granted due to lack of standing. See In re Ass'n of Trial Lawyers of Am., 228 N.J.Super. 180, 549 A.2d 446 (App.Div.) (treating a motion to dismiss for lack of standing as failure to state a claim), certif. denied, 113 N.J. 660, 552 A.2d 180 (1988).
In opposition, plaintiff submitted the certification of its managing member, an experienced commercial and residential real estate developer, who stated that plaintiff was ready to develop the project either by itself, by reinstating the contract with Richman, or by contracting with another company specializing in this kind of development. Attached to the certification was a letter to plaintiff from Richman in which Richman stated that if plaintiff were successful on the appeal, Richman "would be very interested in pursuing the reinstatement of the prior Purchase Agreement." Plaintiff requested leave to amend the complaint to assert these additional facts, if necessary to achieve standing.
The trial court granted the Board's motion to dismiss on the basis that plaintiff lacked standing, stating that plaintiff did not have "a sufficient stake and real adverseness [with] respect to the subject matter of the litigation." The court went on to explain:
The decision did not cause any damage or pose any possibility of future harm to the plaintiff or its interests. The decision only pertains to the application of The Richman Group. It does not prevent the plaintiff from seeking further application or seeking another agreement with a company like The Richman Group or to pursue this on [its] own.
Plaintiff moved for reconsideration and for leave to amend the complaint. The proposed amended complaint sought to address the standing issue by stating that plaintiff had standing as representative of the eighty-four low income households that would benefit from the project and also as the owner of the property which will increase in value if the development is approved. The proposed amended complaint also stated that if plaintiff is required to submit a new application to the planning board, it will incur substantial expense and *1057 the project will be delayed or may not go forward at all. The trial court denied the motion for reconsideration and to amend the complaint. This appeal followed.
Plaintiff contends that it has standing to pursue the case, that the trial court relied on inapplicable case law, that the trial court should have permitted plaintiff to amend its complaint, and that the trial court should have applied the summary judgment standard when deciding the motion. The Board disagrees. It maintains that plaintiff does not have standing to pursue this appeal and that the trial court correctly denied plaintiff's application to amend the complaint.
A motion to dismiss under Rule 4:6-2(e), must be "approach[ed] with great caution." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 771-72, 563 A.2d 31 (1989). Because the motions are "almost always brought at the very earliest stage of the litigation, [they] should be granted in only the rarest of instances." Id. at 772, 563 A.2d 31. If the complaint is subject to dismissal, the dismissal is without prejudice to the filing of an amended complaint, provided there is no other bar, such as the statute of limitations. Ibid.
When matters outside of the pleadings are presented and not excluded by the court, the trial judge must treat a motion to dismiss for failure to state a claim as if it were a motion for summary judgment. R. 4:6-2. A party is entitled to summary judgment if, after according the non-movant all of the "legitimate inferences" that may be drawn from the evidence, "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). In our review, we apply the same standard as the trial court. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998).
Further, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995). With these principles in mind, we review the trial court's dismissal of plaintiff's claim for lack of standing.

II
The concept of standing "`refers to the plaintiff's ability or entitlement to maintain an action before the court.'" In re Adoption of Baby T., 160 N.J. 332, 340, 734 A.2d 304 (1999) (quoting N.J. Citizen Action v. Riviera Motel Corp., 296 N.J.Super. 402, 409, 686 A.2d 1265 (App.Div.), certif. granted, 152 N.J. 13, 702 A.2d 352 (1997), appeal dismissed as moot, 152 N.J. 361, 704 A.2d 1297 (1998)). Rule 4:26-1, allowing the "real party in interest" to prosecute an action, is ordinarily determinative of standing. Pressler, Current N.J. Court Rules, comment 2.1 on R. 4:26-1 (2010). To have standing, the plaintiff must have "`a sufficient stake and real adverseness with respect to the subject matter of the litigation [and a] substantial likelihood of some harm ... in the event of an unfavorable decision.'" Jen Elec., Inc. v. County of Essex, 197 N.J. 627, 645, 964 A.2d 790 (2009) (alteration in original) (quoting In re Adoption of Baby T., supra, 160 N.J. at 340, 734 A.2d 304). "A financial interest in the outcome ordinarily is sufficient to confer standing." Strulowitz v. Provident Life & Cas. Ins. Co., 357 N.J.Super. 454, 459, 815 A.2d 993 (App. Div.), certif. denied, 177 N.J. 220, 827 A.2d 288 (2003).
New Jersey courts take a liberal attitude toward standing. Jen Elec., Inc. v. *1058 County of Essex, supra, 197 N.J. at 645, 964 A.2d 790. As the Court has stated:
Our "liberal rules of standing" are animated by a venerated principle: "In the overall we have given due weight to the interests of individual justice, along with the public interest, always bearing in mind that throughout our law we have been sweepingly rejecting procedural frustrations in favor of `just and expeditious determinations on the ultimate merits.'"
[Ibid. (quoting Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 107-08, 275 A.2d 433 (1971)).]
However, we "will not render advisory opinions or function in the abstract." Crescent Park Tenants Ass'n v. Realty Equities Corp., supra, 58 N.J. at 107, 275 A.2d 433. For these reasons, the courts will not entertain cases brought by those who are merely "intermeddlers," "interlopers[,] or strangers to the dispute." Ibid.
We note that in appeals from decisions of boards of adjustment on applications for variances, standing is not limited to the applicant before the board. Standing has been accorded to others, including objectors, and in limited circumstances, to the municipal governing body and landowners in adjacent communities. William M. Cox, New Jersey Zoning and Land Use Administration, § 33-1.1 at 716 (2010). Thus, the fact that plaintiff was not the applicant does not necessarily deprive it of standing.
As the owner of the land, plaintiff is directly affected by the variance application because "`[v]ariances run with the land.'" Stop & Shop Supermarket Co. v. Bd. of Adjustment of Springfield, 162 N.J. 418, 432, 744 A.2d 1169 (2000) (alteration in original) (quoting Aldrich v. Schwartz, 258 N.J.Super. 300, 308, 609 A.2d 507 (App.Div.1992)); see also Cox, supra, § 13-2.1 at 350 (stating that "[a] variance once granted runs with the land"). A variance is not a personal right granted by a board to an applicant, but rather it is a right that attaches to the land and successive owners take subject to the benefits of the variance. Stop & Shop Supermarket Co. v. Bd. of Adjustment of Springfield, supra, 162 N.J. at 432-33, 744 A.2d 1169. This principle is consistent with land use law throughout the country. Id. at 433, 744 A.2d 1169.
As a result, if the Board had granted the variance sought by Richman, that variance would have benefited plaintiff's property. If Richman for any reason did not go through with the project, that variance would still have provided an advantage to plaintiff's property by allowing plaintiff or its successors or, with its consent, other developers to construct affordable housing on the property consistent with the variance.
Logically, the converse is true; when Richman's variance application was denied, plaintiff's property was denied this benefit. Under these circumstances then, plaintiff is a real party in interest with a sufficient stake in the outcome to confer standing. There is real adverseness here with respect to the subject matter since plaintiff seeks to pursue the development of its property along the lines of the Richman application, either on its own or by involving another developer in the project. This is something it cannot do without a variance.
In arguing that plaintiff lacks standing, the Board relies on our holding in Spinnaker Condominium Corp. v. Zoning Board of Sea Isle City, 357 N.J.Super. 105, 813 A.2d 1282 (App.Div.), certif. denied, 176 N.J. 280, 822 A.2d 609 (2003). In that case, we refused to accord standing to a landowner who was attempting to appeal the denial of a variance sought by its lessee. *1059 Id. at 108, 813 A.2d 1282. However, we did so because, as explained below, in the unique factual circumstances presented, the variance under consideration would not have run with the land in the traditional zoning sense.
In Spinnaker, Sprint Spectrum L.P. (Sprint), a wireless telecommunications provider, leased space on the roof of the building of plaintiff Spinnaker Condominium Corporation (Spinnaker). Id. at 109, 813 A.2d 1282. Sprint sought to address a coverage gap in its services by installing antennae and related equipment in that space. Ibid. Its application for a conditional use variance to do so was denied by the Zoning Board of Adjustment of Sea Isle City (the Sea Isle City Board). Id. at 108, 813 A.2d 1282. Sprint did not appeal this adverse decision because it found another location to install the facility. Id. at 109, 813 A.2d 1282. However, Spinnaker, as landowner, sought to appeal. Id. at 108, 813 A.2d 1282. While the trial court upheld the Sea Isle City Board's decision on the merits, on appeal, we addressed the standing issue. Id. at 110, 813 A.2d 1282.
We concluded that Spinnaker had no standing to take the appeal because the variance sought was unique to the applicant and "would not adhere to the land in the traditional zoning sense." Id. at 114, 813 A.2d 1282. We noted that Spinnaker was not a licensed telecommunications service provider under the Federal Communications Act, 47 U.S.C.A. § 332. Spinnaker Condo. Corp. v. Zoning Bd. of Sea Isle City, supra, 357 N.J.Super. at 111, 813 A.2d 1282. Since it could not install the facility on its own, it was not substantially harmed by the denial; denial of the application "[did] not intrude upon any statutory right held by Spinnaker to install or operate the antennae on its own." Ibid. Further, in considering this type of application, a board is required to take into account factors unique to the applicant, namely whether the variance was needed in order to allow that particular wireless telecommunications provider to fill a coverage gap.[3]Id. at 112-13, 813 A.2d 1282. A subsequent wireless telecommunications provider seeking to install a wireless facility at the same location would have "its own discrete, coverage gap" requiring a separate analysis by a board. Id. at 114, 813 A.2d 1282. Thus, the application was not limited to "property-specific" proofs. Id. at 112, 813 A.2d 1282 (quoting Stop & Shop Supermarket Co. v. Bd. of Adjustment of Springfield, supra, 162 N.J. at 431-32, 744 A.2d 1169). As a result, the "conditional-use variance to permit construction of the nine specific antennae proposed by Sprint would not adhere to the land in the traditional zoning sense." Id. at 114, 813 A.2d 1282.
For these reasons, we determined that a variance granted to a telecommunications provider does not run with the land in the "traditional zoning sense" but rather is personal to the particular wireless communications network of the applicant. Ibid. As a result, Spinnaker, as the landowner, *1060 had no standing to challenge the denial of the variance. Ibid.
Unlike the applicant in Spinnaker, Richman was making a traditional land use application dependent upon property specific proofs. It was seeking a use variance in order to construct affordable housing on plaintiff's property. If this variance had been granted, it would have run with the land in the traditional sense and would have been available to plaintiff and subsequent owners of the property. The variance would have benefited plaintiff's property by expanding the uses that could be made of the property. As a result, the denial of the variance deprived plaintiff and its property of this benefit. Thus, the denial of the variance was adverse to plaintiff's interests as property owner. This accords plaintiff a sufficient stake in the matter and presents genuine adverseness, so that, under New Jersey's liberal interpretation of standing requirements, plaintiff has standing to challenge the denial of the variance. Accordingly, plaintiff does have standing to appeal the denial of the use variance.
The Board argues that, similar to the circumstances in Spinnaker, Richman's application was not a traditional variance application because it sought to satisfy the positive criteria necessary for a use variance by seeking to develop affordable housing. See N.J.S.A. 40:55D-70(d); New Brunswick Cellular Tel. Co. v. Borough of S. Plainfield Bd. of Adjustment, 160 N.J. 1, 6, 733 A.2d 442 (1999) (setting forth the requirements of positive and negative criteria for a use variance); see also Homes of Hope, Inc. v. Eastampton Twp. Land Use Planning Bd., 409 N.J.Super. 330, 333-34, 337-38, 976 A.2d 1128 (App.Div. 2009) (stating that the provision of affordable housing is an inherently beneficial use for the purpose of satisfying the positive criteria for a use variance under N.J.S.A. 40:55D-70(d)(2)). The Board notes that Richman had obtained a federal tax credit for the project, something that plaintiff may be unable to receive. Thus, the federal tax credit is a factor unique to Richman, the applicant.
These circumstances, however, do not defeat plaintiff's standing. Whether the plaintiff or another developer receive the federal tax credit is not a relevant factor in the Board's land use decision. What is relevant is whether the project, in this case one with only moderate income units, would satisfy the positive criteria as an inherently beneficial use. This is very different from the circumstances in the Spinnaker case where the factor that was unique to the applicant, namely the coverage gap, was relevant in determining whether the applicant was entitled to the variance.
Finally, we note that the trial court's statement and the Board's position that plaintiff may start the application anew and then appeal any adverse decision in its own right overlooks the possible application of the doctrine of res judicata on a subsequent application. See Cox, supra, § 28-3.2 (discussing the application of the doctrine of res judicata in land use applications).
Having determined that plaintiff has standing as owner of the property, we need not address the question of whether plaintiff could have standing in a representative capacity for moderate income households. We also note that plaintiff had sought to amend its complaint to address more specifically the standing issue. That application was denied by the trial court, and plaintiff appealed that determination. In light of our ruling allowing *1061 plaintiff standing, we understand the question of amending the complaint to be moot. However, if plaintiff seeks to amend the complaint for other reasons, then the application should be renewed before the trial court.
Reversed and remanded to the Law Division, Somerset County. We do not retain jurisdiction.
NOTES
[1] Judge Yannotti did not participate in oral argument. However, with the consent of counsel, he has joined in this opinion. R. 2:13-2(b).
[2] The application was bifurcated. Richman first sought the use variance, and once that was granted, it intended to submit an application for site plan approval.
[3] As we explained in Spinnaker:

[A] wireless telecommunications provider is required to provide reliable services throughout its coverage area. To achieve this goal, the provider creates a network of individual "`cell sites,' which consist of radio antennae and related equipment that send and receive radio signals to and from customers' cellular phones." Cell "sites" must be high enough to permit successful transmission and receipt of the signal's low-power, high-frequency radio waves. Often, additional cell sites must be added as cellular service usage increases. Inadequate facilities may create "coverage gaps" that may result in inadequate service, static and inability to place calls.
[Spinnaker Condo. Corp. v. Zoning Bd. of Sea Isle City, supra, 357 N.J.Super. at 113, 813 A.2d 1282 (citations omitted).]