NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2574-11T1
                        A-3129-11T1


PORT LIBERTE II CONDOMINIUM
ASSOCIATION, INC.,

    Plaintiff-Appellant,

v.

NEW LIBERTY RESIDENTIAL URBAN
RENEWAL COMPANY, LLC, APPLIED
DEVELOPMENT COMPANY, APPLIED
PROPERTY MANAGEMENT CO., LLC,
DAVID BARRY, ELIA BORELLI, and
BARBARA OIF STACK,

    Defendants,[1]

and

RELIABLE ROOFING CO.,
RELIABLE ROOFING MAINTENANCE, INC.,
SOUTH SHORE CONTRACTING,
DSJ CONSTRUCTION, INC.,
CARFARO ORNAMENTAL IRONWORKS, INC.,
A&F CONSTRUCTION, INC.,
SALEM MASONRY CO., INC.,
COFFEY BROTHERS, INC.,

> APPROVED FOR PUBLICATION
>
> **January 31, 2014**
>
> **APPELLATE DIVISION**

---

[1] These defendants had been the developers on the project.  They settled their dispute with plaintiff during the pendency of this appeal and filed a stipulation of dismissal on June 18, 2013; but, before that occurred, they had filed a responding brief and a cross-appeal. Most of the other defendants joined the responding brief.  Accordingly, we considered the responding brief on this appeal.  The cross-appeal is dismissed as settled.

UNITED FIREPROOFING COMPANY, INC.,[2]
FRITZE KEYSPAN, LLC,
COMMUNITY MAINTENANCE, LLC,
BEYER BLINDER BELLE, LLP,
PATWOOD ROOFING,
QUALITY ALUMINUM and
VINYL INSTALLERS, QUALITY, INC.,
ENVIRONMENTAL COMFORT, INC.,
K&F MECHANICAL, LISA CONSTRUCTION,
TRUSS SYSTEMS, INC.,
D&K GYPSUM FLOORS, INC.,
TECHNICAL BUILDING STRUCTURES,
RAINBOW PAINTING, INC.,
ARCHITECTURAL CONSTRUCTION
ASSOCIATES, AGRIMAR F.
PEREIRA/GOIANO CARPENTRY, INC.,
BETTER HOMES CONSTRUCTION, INC.,
BOLA ELITE CONSTRUCTION, INC.,
BOLIVAR GUAMAN, BSB CONSTRUCTION,
INC., CARLOS P. MARTINS, GELSON
DESOUZA GOMES, HOLY-WOOD
CARPENTRY, INC., IRON
CONSTRUCTION, INC./IRON C. BORBA,
JOSE MOURA CONSTRUCTION CORP.,
JOSE H. DEMOURA, JOVANE S. MOURAO,
LUIS O. MACANCELA, LUIS SARMIENTO,
ROBERTO B. MINCHALA, MOURA
CONSTRUCTION CORP., OAKWOOD
CARPENTRY, INC., JUAN AGEITOS
D/B/A ORCA CONSTRUCTION, THOR
CONSTRUCTION CORP., GENA & SONS,
CORP. D/B/A GENA CONSTRUCTION
COMPANY, FMJ CONSTRUCTION,
KARPATEY MASONRY T/A BV MASONRY,
VANNWALL CONSTRUCTION CORP.,
JOAO BRAVADO, MESFAR A. DEANDRADE,
GILBERTO A. AGUILAR, JOSE S.
RAMOS, LUIS EUSEBIO, and
VINCENT J. BARONE,

     Defendants-Respondents,

---

[2] During this appeal, plaintiff reached a settlement with defendant United Fireproofing Company, Inc., and a stipulation of dismissal was filed on October 10, 2013.

and

AJD CONSTRUCTION CO., INC.,

     Defendant/Third-Party
     Plaintiff-Respondent,

v.

SOUTH SHORE CONTRACTING,
DSJ CONSTRUCTION, INC.,
CARFARO ORNAMENTAL IRONWORKS,
A&F CONSTRUCTION, INC.,
SALEM MASONRY CO., INC., COFFEY
BROTHERS, INC., UNITED FIREPROOFING
COMPANY, INC., FRITZE KEYSPAN,
LLC,

     Third-Party Defendants,

v.

BEST CONSTRUCTION CO., INC.,

     Defendant/Third-Party
     Plaintiff-Respondent,

v.

VANNWALL CONSTRUCTION CORP.,
GENA & SONS, CORP. d/b/a
GENA CONSTRUCTION COMPANY,
FMJ CONSTRUCTION,
KARPATEY MASONRY t/a
BV MASONRY and
POLMAX CONSTRUCTION,

     Third-Party Defendants,

and

VANNWALL CONSTRUCTION CORP.,

     Defendant/Third-Party
     Defendant/Fourth-Party
     Plaintiff-Respondent,

v.

JOAO BRAVADO, MESFAR A. DEANDRADE,
GILBERTO A. AGUILAR, JOSE S.
RAMOS, LUIS EUSEBIO,

    Fourth-Party Defendants,

and

E. ROBINSON GROUP, INC.,

    Defendant/Third-Party
    Plaintiff-Respondent,

v.

SENERGY, INC.,

    Third-Party Defendant,

and

MINNO AND WASKOW ARCHITECTS
AND PLANNERS,

    Defendant/Third-Party
    Plaintiff,

v.

VINCENT J. BARONE,

    Third-Party Defendant,

and

FIRE PROTECTION & MECHANICAL
ENGINEERING, INC.,

    Defendant/Third-Party
    Plaintiff,

v.

LIUTAS K. JURSKIS,

4

Third-Party Defendant.

_____

PORT LIBERTE II CONDOMINIUM
ASSOCIATION, INC.,

    Plaintiff-Appellant,

v.

NEW LIBERTY RESIDENTIAL URBAN
RENEWAL COMPANY, LLC, APPLIED
DEVELOPMENT COMPANY, APPLIED
PROPERTY MANAGEMENT CO., LLC,
DAVID BARRY, ELIA BORELLI,
BARBARA OIF STACK, and
MINNO AND WASKOW ARCHITECTS
AND PLANNERS,

    Defendants,

and

AJD CONSTRUCTION CO., INC.,
COMMUNITY MAINTENANCE, LLC,
and BEYER BLINDER BELLE, LLP,

    Defendants-Respondents.

_____

MINNO AND WASKO ARCHITECTS AND
PLANNERS,

    Defendant/Third-Party
    Plaintiff-Respondent,

v.

ASSOCIATED ENGINEERING CONSULTANTS,

    Third-Party Defendant-
    Respondent.

_____

Argued November 19, 2013 — Decided January 21, 2014

Before Judges Reisner, Ostrer and Carroll.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket Nos. L-1222-08 and L-3035-10.

John Randy Sawyer argued the cause for appellant Port Liberte II Condominium Association, Inc. in A-2574-11 and A-3129-11 (Stark & Stark, attorneys; Mr. Sawyer and Gene Markin, of counsel and on the brief).

Stephen L. Petrillo argued the cause for respondent AJD Construction Co., Inc. in A-2574-11 and A-3129-11 (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Mr. Petrillo and Walter F. Kawalec, III, on the brief).

K&L Gates, LLP, attorneys for respondents New Liberty Residential Urban Development Company, Applied Property Management Co., LLC, David Barry, Elia Borelli, and Barbara Oif Stack (the developers) in A-2574-11 and A-3129-11 (Patrick J. Perrone, of counsel; Loly G. Tor and Christopher J. Archer, on the brief).

Winter & Winkler, attorneys for respondents Moura Construction Corp. and Agrimar F. Pereira t/a Goiano Carpentry, Inc. in A-2574-11 join in the brief of respondent developers.

Gebhardt & Kiefer, attorneys for respondent DSJ Construction, Inc. in A-2574-11 join in the brief of respondent developers.

Schoenfeld Moreland, attorneys for respondent Luis O. Macancela in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Wade Clark Mulcahy, attorneys for respondent Mesfar E. DeAndrade in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Decker & Magaw, attorneys for respondent Oakwood Carpentry, Inc. in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Fishman McIntyre, attorneys for respondent E. Robinson Group, Inc. in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Biancamano & Di Stefano, P.C., attorneys for respondent A&F Construction, Inc. in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Joseph Carolan, attorneys for respondents Reliable Roofing Maintenance, Inc. and Architectural Construction Associates in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Milber Makris Plousadis & Seiden, LLP, attorneys for respondents Bolivar Guaman and Carlos P. Martins in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Bevan, Mosca, Giuditta & Zarillo, attorneys for respondents Salem Masonry Co., Inc., and Best Construction Company, Inc. in A-2574-11 and A-3129-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Morgan Melhuish Abrutyn, attorneys for respondent Carfaro Ornamental Ironworks, Inc. in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Budd Larner, attorneys for respondent Thor Construction Corp. in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Rawle & Henderson, attorneys for respondent Beyer Blinder Bell, LP in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Mayfield, Turner, O'Mara & Donnelly, attorneys for respondents Patwood Roofing, the Reitze Company, and Gelson DeSouza Gomes in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Testa Heck Scrocca & Testa, attorneys for respondent BSB Carpentry, Inc. in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Leary, Bride, Tinker & Moran, attorneys for respondent Quality Aluminum & Vinyl Installers in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Maloof, Lebowitz, Connahan & Oleske, attorneys for respondent Coffey Brothers, Inc. in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

McElroy, Deutsch, Mulvaney & Carpenter, attorneys for respondent Gena Construction Corp. in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Gibbons P.C., attorneys for respondent Jovane S. Mourao in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Goldberg Segalla, attorneys for respondent United Fireproofing Company, Inc. in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Bodell, Bove, Grace & Van Horn, attorneys for respondent Karpatey Masonry in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Braff, Harris & Sukoneck, attorneys for respondent Holy-Wood Carpentry, Inc. in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Powell & Roman, attorneys for respondent Juan Ageitos d/b/a Orca Construction in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Suarez & Suarez, attorneys for respondent Minno and Wasko Architects in A-2574-11 and A-3129-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Hack, Piro, O'Day, Merklinger, Wallace & McKenna, attorneys for respondent Associated Engineering Consultants, Inc. in A-3129-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Hoagland Longo Moran, Dunst & Doukas, attorneys for respondent Fire Protection and Mechanical, Inc. in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Hartmann Doherty Rosa Berman & Bulbulia, LLC, attorneys for respondent Fritze Keyspan, LLC in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Dwyer Connell & Lisbona, attorneys for respondent FMJ Construction in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Gartner & Bloom, attorneys for respondent South Shore Contracting in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Faust Geotz Schenker & Blee, attorneys for respondent Jose DeMoura in A-2574-11 join in the briefs of respondents AJD Construction Co., Inc. and the developers.

Respondent Senergy, Inc. in A-2574-11 has not filed a brief.

Respondent Vincent J. Barone in A-2574-11 has not filed a brief.

Respondent Vannwall Construction Corp. in A-2574-11 has not filed a brief.

The opinion of the court was delivered by

Susan L. Reisner, P.J.A.D.

In these two appeals, which we have consolidated for purposes of this opinion, plaintiff Port Liberte II Condominium Association (Association or plaintiff) appeals from orders dated May 13, 2010 and September 29, 2010, denying its motion to amend its complaint in Docket No. L-1222-08 and denying reconsideration, and orders dated September 23, 2011, October 12, 2011, December 21, 2011, and January 20, 2012, granting summary judgment dismissing its complaint in L-1222-08 and Docket No. L-3035-10, and December 21, 2011, denying plaintiff's

motion to reinstate the complaint in L-l222-08.  For the reasons that follow, we reverse the orders on appeal and remand these cases to the Law Division for further proceedings consistent with this opinion.

Despite the extensive record, the issues are limited:  (1) Did the trial court err as a matter of law in dismissing the Association's complaints on the grounds that the Association did not obtain the unit owners' approval to institute the litigation,  in violation of the Association's by-laws? and (2) Did the trial court abuse its discretion in denying plaintiff's motion to amend its complaint?

We conclude that, to the extent defendants had an interest in ensuring that plaintiff was the proper party to pursue the lawsuit, so as to avoid future litigation by dissenting unit owners, defendants' interest was satisfied when, in 2009 and 2011, the unit owners voted to authorize the lawsuit.  The trial court misconstrued the by-laws - and disserved the unit owners' interests - in holding that the owners could not ratify the Association's action after the lawsuit was filed.  Moreover, despite their disingenuous expressions of concern for the owners' financial interests, defendants have no standing to enforce the unit owners' rights under the by-laws.  Hence, we conclude that the trial court erred in dismissing the lawsuit.

We also find that the trial court mistakenly exercised its discretion in denying the motion to amend the complaint, thereby requiring the filing of a second lawsuit.

I

The pertinent facts are undisputed and can be stated briefly for purposes of this appeal. The Association, a non-profit corporation, is the owner, and has legal responsibility for, the common elements at a 225-unit condominium development in Jersey City. The development was completed in 2004. According to the Association's complaint, during the transition period, in which the developer was handing over control of the development to the Association, the Association and its members discovered a broad array of alleged construction defects in the buildings including the common areas. After lengthy efforts to negotiate a settlement, the Association filed suit in March 2008 against the developers, the general contractor (Applied Development Corporation), and numerous subcontractors.

At the time the suit was filed, settlement efforts were still ongoing, but the statute of limitations was about to expire. According to plaintiff, due to the press of time, it filed this lawsuit without obtaining the approval of the unit owners, as required by Section 4.7C of the Association's by-laws. That provision states that certain questions "must be

decided by a vote of the Members at a special meeting called to decide each specific issue respectively, after written notice of the question has been forwarded to each Member." With exceptions not relevant here, those questions include: "The commencement of any litigation by the Board of Trustees."

After further negotiations with defendants proved fruitless, the Association called a meeting of the unit owners pursuant to Section 4.7C, to obtain their approval for the Board of Trustees to pursue the litigation and to borrow money to fund it. At the October 12, 2009 meeting, the unit owners present voted 72 to 3 to obtain the loan and pursue the litigation. Thereafter, no unit owner objected to the vote, sought to intervene in the lawsuit, or otherwise legally questioned the Association's authority to conduct the litigation pursuant to the by-laws. The Association duly pursued the lawsuit, massive amounts of discovery were taken, and the complaint was amended several times.

In May 2011, defendants filed a summary judgment motion, seeking to dismiss the complaint on the grounds that the Association had not properly obtained the unit owners' authorization before filing the lawsuit. Notwithstanding the October 12, 2009 meeting and the 72-3 vote of the unit owners in favor of pursuing the litigation, the trial judge granted the

motion and dismissed the complaint. The court reasoned that, absent pre-suit approval, the Association lacked standing to file the lawsuit.[3] On October 24, 2011, the Association held another meeting of the unit owners, for the purpose of asking them to ratify the filing of the litigation. The members approved the ratification by a vote of 65 to 1. The Association then moved to reinstate the complaint; the trial court denied the motion on the grounds that lack of standing at the commencement of the suit could not be cured.

Meanwhile, the court had denied plaintiff's motion to file a fourth amended complaint adding claims concerning structural defects in the common areas. As a result, in 2010, the Association filed a separate lawsuit addressing those claims (L-3035-10). That lawsuit was also the subject of the 2011 ratification vote by the unit owners. Despite the overwhelming approval of the unit owners, the trial court dismissed that second lawsuit in January 2012, on the grounds that the Association lacked standing to file it. As a result of the dismissal of both lawsuits, the unit owners faced what the Association contended was an $18 million expense to repair

---

[3] The court also found that the 2009 meeting notice was insufficiently specific.

construction defects in the common areas, without recourse against the builders and other defendants.

## II

We review a trial court's grant of summary judgment de novo, using the <u>Brill</u> standard. <u>Prudential Prop. and Cas. Ins. Co. v. Boylan</u>, 307 <u>N.J. Super.</u> 162, 167 (App. Div.), <u>certif. denied</u>, 154 <u>N.J.</u> 608 (1998); <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 <u>N.J.</u> 520, 540 (1995). We review a trial court's decision to grant or deny a motion to amend the complaint for abuse of discretion. <u>See</u> <u>Kernan v. One Wash. Park Urban Renewal Assocs.</u>, 154 <u>N.J.</u> 437, 457 (1998).

The Condominium Act (Act), <u>N.J.S.A.</u> 46:8B-1 to -38, authorizes a condominium association to file suit against builders and other third parties for damage to the common areas. <u>Siller v. Hartz Mtn. Assocs.</u>, 93 <u>N.J.</u> 370, 377-78 (1983); <u>see</u> <u>N.J.S.A.</u> 46:8B-15. In fact, absent an association's wrongful failure to file such a suit, the Act gives the association the exclusive authority to file such lawsuits for damage to the common areas. <u>Siller</u>, <u>supra</u>, 93 <u>N.J.</u> at 380. "A sensible reading of the [Act] leads to the conclusion that such causes of action belong exclusively to the association, which, unlike the individual unit owner, may apply the funds recovered on behalf of all the owners of the common elements." <u>Id.</u> at 381. When an

association files suit for damages to the common areas, it may assess the litigation costs proportionately against the unit owners, as part of the common charges. Id. at 378 n.7.

In construing the Act, the Court noted the important policy reasons for giving associations, rather than unit owners, standing to sue under the Act:

> Avoidance of a multiplicity of suits, economic savings incident to one trial, elimination of contradictory adjudications, expedition in resolution of controversies, accomplishment of repairs, and the positive effect on judicial administration are supportive policy reasons. Moreover, the financial burden on an individual owner may be so great and so disproportionate to his potential recovery that he could not or would not proceed with litigation.
>
> [Id. at 379 (footnote omitted).]

If an association wrongly fails to act, or proceeds with litigation wrongfully, a unit owner may file a derivative suit against the association:

> This is not to say that a unit owner may not act on a common element claim upon the association's failure to do so. In that event the unit owner's claim should be considered derivative in nature and the association must be named as a party. Rule 4:32-5 would be applicable. That Rule governs actions "brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly be asserted by it."

[Id. at 381.]

In rejecting a narrow construction of an association's standing to sue for damage to the common elements, we have held that:

> The unique relationship between a condominium association and a developer, created by statute, allows an association to step into the developer's shoes when control is passed to the association. N.J.S.A. 46:8B-12.1a. "[T]he clear import, express and implied, of the statutory scheme is that the association may sue third parties for damages to the common elements, collect the funds when successful, and apply the proceeds to repair the property." Siller v. Hartz Mtn. Assocs., 93 N.J. 370, 377 (1983). Under the Condominium Act, the association "shall be responsible for the administration and management of the condominium and condominium property, including but not limited to the conduct of all activities of common interest to the unit owners." N.J.S.A. 46:8B-12. "Whether or not incorporated, the association shall be an entity which shall act through its officers and may enter into contracts, bring suit and be sued." N.J.S.A. 46:8B-15(a). An association "may assert tort claims concerning the common elements and facilities of the development as if the claims were asserted directly by the unit owners individually." N.J.S.A. 46:8B-16(a).
>
> [Port Liberte Homeowners Ass'n v. Sordoni Constr. Co., 393 N.J. Super. 492, 503 (App. Div.), certif. denied, 192 N.J. 479 (2007).]

In Port Liberte v. Sordoni, we held that the trial court's ruling - precluding the association from suing a contractor on the grounds that the association lacked standing - was a

miscarriage of justice and contrary to the purpose of the Condominium Act.

> To say that plaintiffs do not have standing to sue Dryvit because PLP, the now-bankrupt developer, was the party to whom the misrepresentations were made and not plaintiffs, produces an unjust result and is contrary to the legislative scheme permitting a condominium homeowners association to institute suit to recover damages to the common elements. N.J.S.A. 46:8B-14, -15(a), and -16(a).
>
> [Id. at 501-02.]

We reach a similar conclusion here. Given that the Association was legally responsible for the upkeep of the common areas and was authorized by statute to sue for damage to those areas, we conclude that the Association had standing to file the lawsuit. See R. 4:26-1. In other words, it had a concrete financial interest in the litigation, was genuinely adverse to defendants, and was the only entity with statutory power to file the complaint. See Siller, supra, 93 N.J. at 381; Belmont Condo. Ass'n v. Geibel, 432 N.J. Super. 52 (App. Div.) (taking a broad view of an association's standing to pursue claims concerning the common areas), certif. denied, ___ N.J. ___ (2013); Spinnaker Condo. Corp. v. Zoning Bd. of Sea Isle City, 357 N.J. Super. 105, 110 (App. Div.) (reviewing general rules of standing), certif. denied, 176 N.J. 280 (2003). However, under the by-laws, the Association did not have legal authorization to

file the lawsuit on the date the complaint was filed.  See N.J.S.A. 46:8B-15 (an association's powers are subject to the by-laws).  The question is whether the unit owners could remedy that lack of authorization by voting to ratify the filing.  We conclude that they could.

We find it would be contrary to the purpose of the Condominium Act, and to the spirit and purpose of the by-laws themselves, for the court to deny the unit owners a chance to ratify the litigation before dismissing it.  As defendants acknowledge, Section 4.7C of the by-laws was intended to protect the unit owners' financial interests by requiring pre-approval of possibly expensive litigation.  However, the owners clearly have an equally great - if not greater - financial interest in recovering damages to repair the common areas, because otherwise they will have to pay for the repairs themselves through assessments.  We will not enforce a statute or regulation in a manner that would produce an absurd result, contrary to its purpose.  See Hubbard v. Reed, 168 N.J. 387, 392 (2001).  Here, it would be absurd to construe paragraph 4.7C in a way that would strip the owners of a cause of action designed to recoup

payment for construction defects, if they are willing to authorize the litigation after it was filed.[4]

The concept of ratification is well understood and has frequently been applied in situations where an entity has the legal power to perform an act, so long as it follows the required formalities. In <u>Grimes v. City of East Orange</u>, 288 <u>N.J. Super.</u> 275 (App. Div. 1996), we explained the difference between an ultra vires act, which cannot be ratified, and an intra vires act, which can be ratified:

> Acts that are ultra vires are void and may not be ratified, while intra vires acts may be. An act is ultra vires if the "municipality [was] utterly without capacity" to perform the act. On the other hand, an intra vires act is one that is merely "voidable for want of authority." Thus, where, for example, a contract is entered into by "an unauthorized agency" but the municipality has the power to enter into such contracts, the contract may be later ratified by the municipal body having the power in the first instance to make the contract. . . . This is the general rule recognized throughout the country.
>
> Applying the forgoing principles to this case, we are satisfied that Harman's invalid appointment to the position of Chief of Police by the Commissioners was capable of ratification. This is so because,

---

[4] This case does not present the issue of whether unit owners might have a cause of action against an association for commencing litigation without prior authorization. As previously noted, in this case, none of the unit owners pursued objections to the litigation.

> although the Commissioners were unauthorized
> to make the appointment, it was within the
> power of the municipality to do so through
> the act of the Mayor with confirmation by
> the Council. As such, Harman's appointment
> was simply voidable unless ratified.
>
> [Id. at 279-80 (citations omitted).]

Ratification must be accomplished "'with the same formalities required for the original exercise of power.'" Ibid. (citation omitted). If so accomplished, the ratification "'relates back to the date of the original action[.]'" Id. at 281 (citation omitted); see also Casamasino v. Jersey City, 158 N.J. 333, 345 (1999). We conclude that is precisely the situation here, where the unit owners ratified the Association's action in a formal vote and, by doing so, authorized the filing of the lawsuit, nunc pro tunc. See City of Trenton v. Fowler-Thorne Co., 57 N.J. Super. 196, 200 (App. Div. 1959) ("[A]n action instituted by an agent without proper authorization from the plaintiff will not, for that reason, be dismissed in the face of subsequent ratification by the principal."), aff'd, 32 N.J. 256 (1960) (affirming specifically on the issue of ratification).

We also agree with plaintiff that defendants had no standing to enforce the by-laws. As noted, the evident purpose of Section 4.7C was to protect the financial interests of the unit owners against improvident legal expenses undertaken by the

Association. Defendants, who are strangers to the relationship between the Association and the unit owners, have no standing to enforce the by-laws or to protect the owners' financial interests. See Abbott v. Burke, 206 N.J. 332, 371 (2011) (ordinarily a party may not file suit asserting the rights of another); N.J.S.A. 46:8B-16(b) (providing that the association, a unit owner, or a mortgage holder may file suit for failure to comply with the by-laws). Further, because defendants' interests were adverse to the unit owners, letting them enforce the unit owners' interests would be akin to letting the proverbial fox protect the interests of the chickens.

On this record, there is no dispute that the owners voted twice to authorize this litigation. Those votes clearly established that the Association was the only proper party to pursue this lawsuit, see R. 4:26-1; Belmont, supra, 432 N.J. Super. at 74, and satisfied any legitimate concern defendants may have had about the possibility of duplicative future litigation. That should have been the end of the issue.

Billig v. Buckingham Towers Condominium Association I, 287 N.J. Super. 551 (App. Div. 1996), on which defendants rely, does not answer the question in this case. In Billig, we expressed disapproval of a building manager filing a foreclosure suit

against a unit owner, apparently without prior authorization by the association. In that context we observed:

> There are several other matters we are constrained to address. First, is the issue plaintiffs raise respecting the management of the association and, more particularly, the necessity for a formal resolution authorizing litigation. Irrespective of the precise form that authorization takes, we think it evident that the decision to engage in litigation, whether foreclosure or the assertion of affirmative claims against a unit owner or a third party, must be a collective decision of the board. Litigation ought to be a last resort, not a first one. It is expensive, it is burdensome, and when it involves a claim against a unit owner, it may well be counter-productive to the harmony and commonality required for successful community living. Clearly, before the unit owners can be burdened with the financial onus and other burdens of litigation, they must be assured that their elected board has made reasonable efforts otherwise to resolve the dispute, that the members of the board, with as full a briefing as possible, have made a collective decision, and that the decision is properly memorialized.

> [Id. at 564.]

As is clear from the above-quoted language, Billig did not address whether an association could obtain ratification, after the fact, for a lawsuit initially filed without the required authorization. Nothing in the opinion suggests it could not do so, particularly in a case like this one, where the Association filed the complaint but continued its settlement efforts, and

23

did not pursue the litigation in earnest until the unit owners had authorized it.[5]

Defendants' reliance on <u>Deutsche Bank v. Mitchell</u>, 422 <u>N.J. Super.</u> 214 (App Div. 2011), which the trial court also cited, is likewise unpersuasive. <u>Mitchell</u> held that a bank could not cure an initial lack of standing in a foreclosure case by obtaining an assignment of the mortgage and then filing an amended complaint. <u>Id.</u> at 224-25. However, later foreclosure cases have recognized appropriate remedies short of dismissal for technical defects in foreclosure filings, particularly where defendants delayed in raising those defenses. <u>See</u> <u>U.S. Bank Nat'l Ass'n v. Guillaume</u>, 209 <u>N.J.</u> 449, 475-76 (2012); <u>Russo</u>, <u>supra</u>, 429 <u>N.J. Super.</u> at 100-01; <u>see also</u> <u>Bank of New York v. Raftogianis</u>, 418 <u>N.J. Super.</u> 323, 356 (Ch. Div. 2010) (stating that dismissal for lack of standing, rather than allowing plaintiff to cure, may be inappropriate where defendants delayed in raising the issue).

---

[5] Likewise, in the out-of-state cases defendants cite, the associations did not obtain a ratification vote from the unit owners. <u>See</u> <u>Peninsula Prop. Owners Ass'n v. Crescent Res., LLC</u>, 614 <u>S.E.</u>2d 351 (N.C. Ct. App.), <u>appeal dismissed and disc. review denied</u>, 626 <u>S.E.</u>2d 648 (N.C. 2005); <u>River Plaza Homeowner's Ass'n v. Healey</u>, 904 <u>N.E.</u>2d 1102 (Ill. App. Ct. 2009). Further, under North Carolina and Illinois law, standing is jurisdictional, while under New Jersey law it is not. <u>See</u> <u>Deutsche Bank v. Russo</u>, 429 <u>N.J. Super.</u> 91, 101-02 (App. Div. 2012).

In this case, where defendants waited years to raise the issue of plaintiff's authority to file the lawsuit, it is particularly appropriate to permit plaintiff to obtain the owners' ratification, instead of ordering dismissal.[6] On this record, if the court questioned the efficacy of the 2009 vote to approve the litigation, the appropriate procedure would have been to stay the lawsuit for a short period of time to permit a re-vote, rather than dismissing the case. See Guillaume, supra, 209 N.J. at 477-78 (citing GE Capital Mortg. Servs., Inc. v. Weisman, 339 N.J. Super. 590, 595 (Ch. Div. 2000)) (approving remedies other than dismissal for violations of statutory pre-filing requirements). Accordingly, we reverse the orders dismissing the complaints in both cases.

> **[At the court's direction, the discussion of issue (2) has been omitted from the published version of the opinion].**

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] In light of our holding on ratification, we need not address plaintiff's argument that the by-law is invalid.

A-2574-11T1