**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1651-24

WELDON MATERIALS, INC.,
a corporation of the State of
New Jersey,

     Plaintiff-Appellant,

v.

PLANNING BOARD OF THE
BOROUGH OF WATCHUNG,
100 UNION AVENUE
HOLDINGS, LLC, and THE
LEARNING EXPERIENCE
HOLDING CORP.,

     Defendants-Respondents.

_____

Argued April 30, 2026 – Decided May 14, 2026

Before Judges Mawla and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1419-21.

Robert F. Simon argued the cause for appellant (Herold Law, PA, attorneys; Robert F. Simon, of counsel; Christine M. Faustini, on the briefs).

Stephen F. Hehl argued the cause for respondent 100 Union Avenue Holdings, LLC (Javerbaum, Wurgaft, Hicks, Kahn, Wikstrom & Sinins, attorneys; Stephen F. Hehl, of counsel; Trevor J. Endler, on the briefs).

Francis P. Linnus argued the cause for respondent Planning Board of the Borough of Watchung (Francis P. Linnus, attorneys; Francis P. Linnus, of counsel; Kristen L. Seibold, on the briefs).

PER CURIAM

Plaintiff Weldon Materials, Inc. appeals from the December 24, 2024 and February 19, 2025 orders, which dismissed its complaint in lieu of prerogative writs against defendants 100 Union Avenue Holdings, LLC and the Borough of Watchung Planning Board related to the grant of a preliminary site plan application to develop a daycare center. We affirm.

Judge Robert A. Ballard, Jr. conducted the prerogative writs trial and rendered an opinion, which recited the salient facts we relate here. Plaintiff owns a rock quarry across the road from 100 Union's property. 100 Union applied to the Board for preliminary and final site plan approval, requesting several variances and waivers under N.J.S.A. 40:55D-70(c)(1) and (c)(2), due to its property's irregular lot shape. The property is in the B-B professional and office zone. The zone permits daycare centers and certain non-residential buildings, and it does not require a specific number of parking spaces.

The Green Brook and its tributary flow around the property. The brook is regulated and studied by the New Jersey Department of Environmental Protection (NJDEP), while the tributary is only regulated by the NJDEP. The riparian zones of the waterways go through parts of the proposed development, including several of its parking spaces. The NJDEP previously assigned a flood hazard line to the property, which impacted various parts of its development. There is also a recorded conservation easement. As a result, 100 Union sought permits from the NJDEP in exchange for mitigation of the hazards.

The development proposed the daycare would be open from 6:30 a.m. until 6:30 p.m. and twenty-two staff members would serve 154 toddlers and preschoolers. The proposed two-story building would have a gross floor area of 10,794 square feet, thirty-one parking spaces, and an outdoor playground area. The Board conducted eleven days of hearings on various dates in 2019, 2020, and 2021.

100 Union presented testimony from six experts: a civil engineer; a professional architect; a traffic expert; an environmental expert; a professional planner; and a professional engineer. Plaintiff presented four witnesses, including: a water hazard expert; a traffic expert; a professional planner; and its president. The Board's engineer and planner also offered commentary.

3

Plaintiff contested three variances requested by 100 Union. It argued the thirty-one parking spaces proposed by 100 Union were not industry standard. The parking set back sought was only five feet from the road, despite an ordinance requiring twenty feet. 100 Union requested a variance to not have a loading zone, which plaintiff asserted was also required by ordinance.

Plaintiff presented evidence showing the ingress and egress from the property was unsafe on account of traffic and flooding on and near the property. There was also a history of accidents on the surrounding streets.

Plaintiff's traffic engineer testified 100 Union did not properly account for parking demands and the proper number of parking spaces was between thirty-seven and fifty-two spots, with the latter number being the safest for a daycare according to the Institute of Transportation Engineering (ITE). The traffic expert also explained the problems with loading and unloading on the property.

On September 21, 2021, the Board issued a resolution granting preliminary approval, which discussed the witnesses' testimonies and credibility. The resolution set forth forty-two conditions 100 Union would have to satisfy, which we need not repeat here.

The Board approved the variance for a parking set back, noting it was not a safety issue, but an aesthetic one. It found thirty-one parking spaces were

4

sufficient for the daycare's operational needs. Notwithstanding an ordinance requiring a loading zone, the Board found a variance was unnecessary for a loading zone because the daycare would not receive numerous shipments and could conduct loading and unloading after hours to alleviate safety concerns.

The Board observed 100 Union's proposed development was a permitted use under N.J.S.A. 40:55D-66.6 and the Board's ordinances. Pursuant to Dunkin' Donuts of New Jersey, Inc. v. Township of North Brunswick, 193 N.J. Super. 513 (App. Div. 1984), the Board concluded it did not have jurisdiction "to prohibit or limit usage generating traffic" to the property. Regardless, it had reviewed the ingress and egress issues and plaintiff's objection based on flooding and concluded those issues did not impact the proposal because flooding had occurred despite the lot's longtime vacancy and would not be exacerbated by the development. Also, the NJDEP had exclusive jurisdiction over the flood hazard issue and 100 Union required permitting from the NJDEP and a license to run the daycare from the Department of Children and Families. The Board found plaintiff's experts were less persuasive than defendants' experts on the claim the application violated various ordinances, particularly those related to flooding.

5

Plaintiff's complaint in lieu of prerogative writs contended 100 Union did not meet its burden to show it was entitled to the variances under N.J.S.A. 40:55D-70. It further alleged the application ignored ordinances, and the resolution was invalid.

The disputed ordinances were: Watchung, N.J. Code § 22-101 to -1001.6 (Floodplain Management Regulations); Watchung, N.J. Code § 28-401(A) (General Zoning District Regulations – Floodplain Development Restrictions); Watchung, N.J. Code § 28-407(F) ("B-B" Professional and Office – Off-Street Parking and Loading); Watchung, N.J. Code § 28-401(S)(2) (General Zoning District Regulations - Community Residences and Community Shelters, Family Day Care Homes and Child Care Centers); and Watchung, N.J. Code § 28-503(D)(2) (Off-Street Parking and Loading Requirements – Nonresidential Uses – Parking Requirements).

The General Zoning District Regulations states:

> Floodplain Development Restrictions. No structure or use shall be moved, added to, enlarged and/or established, nor shall any fill be placed nor shall the elevation of any land be substantially changed, in the floodplain hazard area except in accordance with the Floodplain-Flood Hazard Ordinance[] of the Borough of Watchung or other applicable statute or regulation.
>
> [Watchung, N.J. Code § 28-401(A).]

The "B-B" Professional and Office – Off-Street Parking and Loading ordinance reads: "Parking spaces and loading areas shall be provided for each use in accordance with the requirements of § 28-503 and the design standards in Article 28-600." Watchung, N.J. Code § 28-407(F). Watchung, N.J. Code § 28-401(S)(2) provides: "Family day care homes and child care centers, as such terms are defined in the [Municipal Land Use Law (]MLUL[)], shall be permitted in the Borough in accordance with the requirements of the MLUL." Additionally, Watchung, N.J. Code § 28-503(D)(2) states:

> In the case of a use not specifically mentioned in the parking schedule above, the requirements of off-street parking facilities for a use most similar, compatible or consistent with the use that is mentioned, shall apply. In the event that there is no similar, compatible or consistent use, off-street parking requirements shall be determined by the Board based upon accepted industry standards.

At the prerogative writs trial, plaintiff presented several exhibits, which described 100 Union's property and the proposed development. Plaintiff conceded the daycare center was a permitted use under N.J.S.A. 40:55D-66.6 but challenged the Board's view the flooding issues belonged to the NJDEP. It pointed out the NJDEP only studied one of the two waterways and flood hazard areas, but the Borough's ordinance required both to be studied before an application could be granted. This was because the proposed parking spaces

intruded on the riparian zone, while another part of the development impacted a wetland buffer area. Plaintiff claimed the application failed because it never explained the mitigation plan for the flood zone and ignored the applicable ordinances. 100 Union did not perform certain analyses required by ordinances and presented a storm maintenance plan rather than a storm management plan.

Plaintiff reiterated its claims regarding the number of parking spaces, parking space set back, loading zone requirement, and traffic issues. It presented an exhibit showing a single truck could not navigate the parking lot if other cars were parked there, which would hamper loading and unloading. Plaintiff argued Dunkin' Donuts supported its position a board must consider off-site traffic for safe ingress and egress. Its traffic expert conducted a study showing the daycare would create traffic delays both in terms of time and cars stacking up. Even 100 Union's traffic expert testified the roads were at capacity. It was obvious the roads could not handle additional vehicles.

Plaintiff argued the resolution was not faithful to the record because it failed to recount its witnesses' testimony. The resolution was not entitled to a presumption of validity because of the ordinance violations.

The judge found the resolution was not arbitrary, capricious, or unreasonable. The Board considered the matter over several years, and its

8

decision showed it reviewed the evidence in rendering its decision.  Deference to the Board was essential in interpreting its own ordinances because it "promotes a consistent approach that permits the Board to uniformly apply its regulations to all developments in the Township."  The judge concluded the Board acted within its discretion when it deferred to the NJDEP on the stormwater management issue, and the Board's decision was supported by the "full factual basis explained on the record."

The judge reached a similar conclusion regarding N.J.S.A. 40:55D-51, which he found affords boards deference on whether to consider "safe and efficient vehicular circulation" and off-site traffic issues under the MLUL.  He concluded the Board had neither misapplied its discretion nor violated the MLUL because while there was evidence of concerns, such as accidents off the property, it "should not impede the construction [of] the daycare facility, a public benefit."  Doing so would "deter future applicants from constructing facilities that greatly benefit the public."

The judge declined to second-guess the Board's decision regarding the variances because it was owed deference in the interpretation of its ordinances, considering the facts and circumstances of the case.  A strict construction of the ordinances would lead to absurd and unreasonable results.  Citing Salt & Light

Company v. Willingboro Township Zoning Board of Adjustment, 423 N.J. Super. 282, 287 (App. Div. 2011), the judge observed we have held the burden of proof is lower where the use is inherently beneficial. Because daycares are inherently beneficial uses, he concluded the Board did not act arbitrarily, capriciously, or unreasonably in deciding whether a particular variance was required, and its findings were based on the facts in the record.

## I.

When reviewing the decision of a municipal land use board, a court must defer to the board's determination, absent a finding it acted in an arbitrary, capricious, or unreasonable manner. Price v. Himeji, LLC, 214 N.J. 263, 284 (2013). "[B]ecause of their peculiar knowledge of local conditions[, zoning boards] must be allowed wide latitude in the exercise of delegated discretion . . . ." Ibid. (quoting Kramer v. Bd. of Adj., 45 N.J. 268, 296 (1965)).

A "board's decisions enjoy a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Ibid. The court need only determine whether a board's decision is supported by the record and is not so arbitrary, capricious, or unreasonable as to amount to an abuse of discretion. Ibid. On appeal, we apply the same legal

10

standards as the trial judge.  Charlie Brown of Chatham, Inc. v. Bd. of Adj., 202

N.J. Super. 312, 321 (App. Div. 1985).

II.

Plaintiff reiterates the Board did not hold 100 Union to the proofs required

under its ordinances and N.J.S.A. 40:55D-51 regarding the flood hazard issues.

The Board erred when it deferred to the NJDEP because the NJDEP permitting

process requires an applicant to comply with local flood damage prevention

ordinances.  As a result of the Board's failure to consider and require compliance

with its ordinances, it did not have all the required information before it and

could not grant preliminary approval.  Plaintiff argues, despite 100 Union's

acknowledgement it needed a variance for the loading zone, the Board referred

to this requirement as a "waiver," which erroneously ignored the ordinance.

Even so, 100 Union failed to prove it was entitled to waivers.  The judge erred

when he overlooked these deficiencies.

Plaintiff asserts the resolution should be voided because it does not

identify whether the parking space approval was under N.J.S.A. 40:55D-

70(c)(1) or (c)(2) and does not evaluate the bulk variance statutory criteria.  The

Board ignored plaintiff's substantial evidence regarding the parking space

variance and instead relied on 100 Union's mistaken view under the MLUL that

11

it was exempt from the parking ordinance requirements. Plaintiff claims the resolution lacks sufficient detail and findings because it contains a blanket statement on the parking space requirement.

Plaintiff argues 100 Union offered improper testimony regarding the negative criteria for both (c)(1) and (c)(2) variances. The testimony focused on the fact the daycare would generate less traffic but ignored there were no residential homes near plaintiff's property, because it was a quarry that conducted regular blasting. 100 Union's testimony also ignored the fact the daycare's size was not restricted and the impacts its size could have on parking. The parking issue was vital because of child pick-up and drop-off at the daycare, and 100 Union failed to correlate this with the number of parking spots or any safety controls for the pick-up and drop-off process. According to plaintiff, the Board ignored its own ordinance and industry standards. Neither defendant met the statutory burden of showing the parking, and its attendant consequences, would not be a "substantial detriment to the public good and w[ould] not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70(d).

Plaintiff claims the resolution misunderstands Dunkin' Donuts, which requires the Board to consider off-site traffic issues when imposing reasonable

conditions of approval on 100 Union. The MLUL provides various statutory requirements of a site plan review, including "standards and requirements relating to . . . [s]afe and efficient vehicular and pedestrian circulation, parking and loading." N.J.S.A. 40:55D-41(b). Therefore, a review of traffic patterns was essential. Plaintiff reiterates the application was devoid of a proper vehicular circulation flow and would result in "complete gridlock" of vehicles on the property.

Plaintiff further claims defendants lack standing because they cannot run a daycare, and the daycare providers' briefs were suppressed on appeal. Even though 100 Union was the applicant, the proposed development was proprietary to the daycare provider company, which is not involved in the appeal. Even if there is standing, the daycare's failure to participate in the appeal raises questions of its intent to operate the daycare, which neither defendant can answer.

Having considered these arguments, we affirm substantially for the reasons expressed in Judge Ballard's thorough and well-written opinion. We add the following comments.

## A.

Although we review legal questions de novo, a board's interpretation of ordinances is given wide latitude and presumed to be correct. Burbridge v. Governing Body of Mine Hill, 117 N.J. 376, 385 (1990). For these reasons, we reject plaintiff's argument the Board's decision not to apply its loading zone ordinance was arbitrary, capricious, or unreasonable. Far from it. The Board's solution for the loading zone issue showed it listened to the testimony and made its best decision under the circumstances.

We reach a similar conclusion regarding the parking space issue. The Board's approval of fewer parking spaces was based on the evidence in the record and expert input. The Board considered the ITE standard and decided on a different outcome based on its assessment of witness testimony and credibility.

It is understood boards make credibility determinations. See El Shaer v. Plan. Bd. of Lawrence, 249 N.J. Super. 323, 329 (App. Div. 1991). Although such determinations are entitled to deference, they must be reasonable. Kramer, 45 N.J. at 285. The rejection of facially reasonable witnesses must also be explained. Bd. of Educ. of Clifton v. Zoning Bd. of Adj., 409 N.J. Super. 389, 434-35 (App. Div. 2009). The Board explained its credibility assessments and why it accepted and rejected expert testimony, and its findings were reasonable.

14

Daycare centers are considered inherently beneficial uses. Sica v. Bd. of Adj., 127 N.J. 152, 159 (1992). The proposed development of a daycare presumptively satisfies the MLUL's positive criteria requirement. Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adj., 152 N.J. 309, 323 (1998). Review of negative criteria is less onerous when a use is inherently beneficial because "[a] too-strict reading . . . [would] result in the denial of many deserving inherently beneficial uses." Sica, 127 N.J. at 163. "If on adequate proofs[,] the board without arbitrariness concludes that the harms, if any, are not substantial, and impliedly determines that the benefits preponderate, the variance stands." Yahnel v. Bd. of Adj., 79 N.J. Super. 509, 519 (App. Div. 1963).

Our Supreme Court has noted, "[a]ny non-residential use is bound to produce some adverse effect," but when the effect is minimal, it should not be considered detrimental. Sica, 127 N.J. at 165. In this regard, boards should: (1) "identify the public interest at stake"; (2) "identify the detrimental effect that will ensue from the grant of the variance"; and in some instances, (3) impose conditions to minimize any effect. Id. at 165-66.

100 Union presumptively satisfied the positive criteria for a (c)(1) or (c)(2) variance, given the proposed daycare was statutorily permitted and an inherently beneficial use. The negative criteria were met because: plaintiff does

15

not contest the public's interest in having a daycare in the community; the detrimental effects were debated at length during the public hearings; and the Board's factfinding and imposition of forty-two conditions reflects it addressed the concerns raised during the hearings.

Plaintiff's argument regarding the supremacy of the Borough ordinances is misplaced. N.J.S.A. 40:55D-66.6 allows for daycare centers in all nonresidential areas and it is understood the MLUL preempts municipal ordinances. Rumson Ests., Inc. v. Mayor of Fair Haven, 177 N.J. 338, 351 (2003). Based on the evidence presented, we reach a similar conclusion regarding plaintiff's claim the Borough ordinance imposed stricter standards regarding the flood hazard zone than the NJDEP standards. The record does not support the proposition.

B.

"[S]tanding must be considered on a case-by-case basis." Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 418 (2018). "A party has standing only if the party 'demonstrates a sufficient stake and real adverseness with respect to the subject matter of the litigation [and a] substantial likelihood of some harm . . . in the event of an unfavorable decision.'" Hoboken for Responsible Cannabis, Inc. v. City of Hoboken Plan. Bd., 480 N.J. Super. 357,

16

372 (App. Div. 2024) (alteration in original) (quoting Edison Bd. of Educ. v. Zoning Bd. of Adj., 464 N.J. Super. 298, 305-06 (App. Div. 2020)) (internal quotation marks omitted).

Though standing before a municipal board is liberally construed, the MLUL presents "specific requirements for standing." Edison Bd. of Educ., 464 N.J. Super. at 306. The MLUL defines an "interested party," in pertinent part as "any person, whether residing within or without the municipality, whose right to use, acquire, or enjoy property is or may be affected by any action taken under [the MLUL]." N.J.S.A. 40:55D-4.

Plaintiff's standing argument lacks merit. 100 Union was the property owner and applicant. The fact the daycare provider has not filed a brief is inconsequential. As a matter of fact and law, 100 Union clearly had standing as an interested party.

The remaining arguments raised on appeal lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-1651-24